IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

FILED
JUL 2 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Zhenli Ye Gon (in detention)
C/o Martin Mcmahon and Associates
1150 Connecticut Avenue, NW, #900
Washington, DC 20036

Petitioner

vs.

Alberto Gonzalez, the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Karen P. Tandy
The Administrator
Drug Enforcement Agency
1400 New York Avenue, NW
Washington, DC 20005
and

Superintendent
John Doe Detention Center
Metropolitan Washington Areas
C/o U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

DEA Field Officers John Does and Marry Roes
C/o U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Respondents

) Civil Action
) No.
) Judge:

Case: 1:07-cv-01308
Assigned To : Roberts, Richard W.
Assign. Date : 7/24/2007
Description: Habeas Corpus/2255

---

URGENT PETITION FOR WRIT OF HEBEAS CORPUS

Comes now, the petitioner, now being illegally detained, acting by and through counsel, respectfully pray for a Writ of Habeas Corpus, seeking for immediate, unconditional release

from an abusive incarceration before any possible irreparable consequences occur. Petitioner states and alleges as follows:

**PARTIES**

The Petitioner, Zhenli Ye Gon, is a citizen of Mexico (please see the photocopy of his passport, Exhibit 1). Petitioner's original permanent residence address is Sierra Madre 515, Colonia Lomas de Chaltepec, Mexico City, Mexico, now having been allegedly destroyed. Petitioner was arrested by Federal law enforcement agencies under the leadership of the Respondents the Hon. Alberto Gonzalez, and now being detained at an unknown place of Federal Detention Facilities, presumably in Washington, DC or in somewhere nearby Washington, DC.

Respondent Alberto Gonzalez is the Attorney General of the U.S. Department of Justice. Under Respondent Attorney General Alberto Gonzalez's direct, indirect, explicit or implicit order or permission, the following law enforcement agencies have taken unlawful arrests, detention against the Petitioner leading to life threatening extradition to the corruptive regime of Mexican government which has been allegedly plotted at least two assassination attempts targeting the Petitioner for the apparent mans rea of silencing him once and ever:

Federal Drug Enforcement Agency;

Federal Bureau of Investigations;

US Attorney Offices and U.S. Marshall.

Respondent Karen P. Tandy is the Administrator of U.S. Drug Enforcement Agency (DEA), under the U.s. Department of Justice. The DEA Office has been repeatedly briefed, with presentation of evidence that the frivolous drug related charges against the Petitioner may have been terribly fraudulent. However, Respondent has volunteered herself to actively involved in the corrupted Mexican regime's political retaliatory persecution against the Petitioner. Under the

command or permission by Respondent Ms. Tandy, the field officers of the DEA raided the Petitioner's lawyer's house and subdued the Petitioner for unlawful arrest and detention, in order to accommodate the Mexican regime's illegitimate, unethical demand for extradition.

Respondents John Does and Marry Roes are field officers of DEA, a field level decision makers in the USDOJ's abusive action. John Does and Marry Roes are jointly and severally liable for this on-going gross violation of civil rights because he is causing immediate control of the Petitioner, (Johnson v. Eisentrager, 339 US 763, 780 (1950)) Mr. Chavez is liable because he is the individual who has the ability to physically produce the petitioner to the court (Johnson v. Eisentrager, 339 US 763, 780 (1950)). Respondent Eduardo Chavez has the same official address in the District of Columbia under the theory of *respondeas superiori*.

The Co-Respondent John Doe Detention Center whose whereabouts is only known to the primary Respondent, Attorney General Gonzalez. The Respondent Superintendant has volunteered itself to act as an unconscionable instrument for the Respondent to illegally keep the Petitioner confined without hearing the grievance of the wrongs in the totality of this case. Co-Respondent's official address was not properly informed either to the Petitioner, or to her counsel. It appears that only the Primary Respondent is able, also liable, to produce the John Doe Detention Center's exact location. We found that John Doe Detention center has become an integral part of this on-going scheme of human rights violations driven by the primary respondent, consequently, we presume the proper recipient of the process service should be taken care of through the official address of the Primary Respondent. Without Respondent John Doe Detention Center's assistance, the principal respondent's unlawful attempts which place the Petitioner under the risk of imminent and immediate peril will not be achieved.

## JURISDICTION AND VENUE

The subject matter jurisdiction is found in 28 U.S.C. § 2241, which grants statutory power to the U.S. District Court, among others, to grant a writ of habeas corpus relief, in connection to Federal Question jurisdiction pursuant to 28 U.S.C. § 1331.

According to section 2241, one of the situations in which federal courts may grant writs of habeas corpus is when the individual is detained under circumstances that violate the "Constitution or laws or treaties of the United States." (28 USC 2241(c )(3)(2005)

Article III of the United States Constitution permits federal courts to hear such cases, so long as the United States Congress passes a statute to that effect. However, when Congress passed the Judiciary Act of 1885. The statute is now found at 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

This case had clear implication of such Federal question issues at the first place: The Respondent's action has brutally violated the Petitioner's 4th, 5th, 6th, 8th and 14th Amendment rights under the U.S. Constitution; Claim for protection under Title 42 U.S. Civil Rights Act. This Honorable District Court's jurisdiction under 28USC 1331 is also found in the underlying cause pursuant to U.S. Federal Civil Rights Act under 42USC 1983 claimed pursuant to Conspiracies to Interfere With Civil Rights (*See* [[USC:42:1985|42 U.S.C. § 1985]); Conspiracy Against Rights of Citizens (*See* 18 U.S.C. § 241); Deprivation of Rights Under Color of Law, (*See* 18 U.S.C. § 242); The Jurisdictional Statue for Civil Rights Cases (*See* 28 U.S.C. § 1443);

The venue is proper in this judicial district under 28USC 1391(a) because the Respondents are the residents of the District of Columbia and reachable within this Judicial District.

**INTRODUCTION**

On July 20, 2007, Mr. Eduardo Medina-Mora, the Attorney General of Mexico, under President Felipe Calderon, in disregard of opposition, ordered destruction and elimination of 19 metric tons of what he called "pseudo-ephedrine" under custody of 82nd infantry battalion (Exhibit 2). What was not set forth in Attorney General's order, but the Attorney General really desires to physically destroy and eliminate, is another evidence: the person of this petitioner. Therefore, on July 5, a group of 4 apparently hit-men, in disguises of "U.S. law enforcement agents", broke the door of house of Johns, a Caucasian couple in 70s, at 8446 Cobble Village, Las Vegas, NV 89117, rudely yelling at them, requesting them to surrender Ms. Michele Wong, the petitioner's girlfriend for "arrest". Later investigation demonstrates that no government agency had ever dispatched any task force to arrest the Petitioner's girlfriend. The couple of Johns are the tenants to the Petitioner's girlfriend, and completely detached from this case, and their report of the episode appears highly credible. Johns encounter with Mafioso squard was immediately reported to USDEA by Michele Wong (Exhibit 3) . The Respondent's unsophisticated action in accommodating Mexican regime's illegitimate demand for extradition, and arresting and detaining the petitioner simply occurred under such a lethal environment.

Petitioner is a law abiding naturalized citizen of Mexico of Chinese origin. Petitioner's original permanent residence, now allegedly destroyed by the Government of Mexico, is situated at Sierra Madre 515, Colonia Lomas de Chaltepec, Mexico City, Mexico. The Petitioner is a successful business entrepreneur doing legitimate business during the course of 20 years. The Petitioner is the owner and CEO of Unimed Pharmaceutical S.A. DE C.V. a corporation incorporated in Mexico. Unimed Pharmaceutical S.A. DE C.V. (hereinafter referred to as "Unimed") is designed to be a giant pharmaceutical conglomerate, now dismantled, with approximately $200 million capital investment. The infrastructure of Unimed, once built, involves, among other things, 22 assembly lines of pharmaceutical products processing, using the most advanced cutting-edge technology from Germany, Italy, Switzerland and the United

States. Petitioner entered the United States in order to escape the disastrous consequences caused by those PAN party operatives who coerced the petitioner to provide his residential house to hide the allegedly PAN secretive presidential campaign funds, by entering the United States on February 2007, holding a B visa in the United States (Please see exhibit #4) Petitioner is father of three U.S. born children, two of whom are now under the life threatening risk under Calderon regime. Petitioner's wife, brothers-in-laws, his employees, including gardener and cleaning persons, have now been endlessly incarcerated as the custody, suffering frequent tortures and inhumane treatments, for the purpose to distort the Petitioner, deterring him from telling the world the truth. Petitioner is a law-abiding citizen, a successful business entrepreneur having engaged in legitimate business for approximately two decades. Petitioner is a PRI Party member in the State of Mexico, and once a PRI Senator liaison (an honorary senatorial member in the Federal Parliament, please see Exhibit #5).

On October 18, 2006, Petitioner concluded a contract with Chifeng Arker Pharmaceutical Technology Co. Ltd, a subsidiary under Shanghai Enterprises, a blue chip company in Hong Kong stockmarket, and a PRC state owned enterprises, purchasing 19 Metric tons of Hydroxy-Benzyl-N-Menthyl Acetatethamtne (hereinafter referred to as "Acetne"), a harmless chemical agents which can be used to produce numerous different legitimate chemical products, including Benylphrine, the Petitioner's know how products used as lawful replacement to Pseudoephedrine, in production of cold medicine. (Contract 06AK0062, Exhibit #6) The Mexican Custom Administration seized the products for suspicion that the shipment of the cargo was itself a pseudoephedrine, a controlled substance, actually it is a completely different chemical agents.

On March 15, 2007, with physical absence of the Petitioner, Mexican law enforcement raided the Petitioner's Residential House in Mexican city, Mexico. The Mexican authorities declared that it found, among others, U.S. $207 Millions "drug money" stacked in the Petitioner's house and a handwritten recipe on how to make a 20 metric tons of *Safrole* into methamphetamine and MDMA. The fact that this Petitioner has never transacted any Safrole proves that the evidence is false. However, the Mexican law enforcement task force did not find any single particle of illicit drug. Mexican law enforcement under Mr. Eduardo Medina-Mora, the Attorney General, arrested and detained 11 people during that March 15, 2007 raid. The arrested including Petitioner's wife, Tamoyil Marx-Yu, a housewife, two brothers-in-law, his such employees as Gardener and cleaning person. All are arrested and detained for having not committed any drug related offenses. After three-month initial detention for criminal investigation, which had turned virtually nothing that the government is seeking, the Mexican authority has not only refused to release those innocent victims, but accelerated its persecutions. Tortures and other inhumane treatments are constantly employed to coerce them to "confess" in implicating the Petitioner's "drug crimes". During such a prolonged period of "criminal investigation", the Mexican government found absolutely no clue of "drug trafficking" activities. For the government's alleged ulterior motive to cover up the real origin of so-called "drug money" found in Petitioner's house, Mexican authorities determined to make up false stories as "methamphetamine drug lord" to defraud Mexican People and the international community, and to legitimize its failure. Under such a dark box policy guideline, Mexican authorities started fabricating false evidence in the case. Mexican National Forensic Laboratories were coerced to mess up forensic testing procedures by tainting and contaminating the samples for the purpose to obtain the "superior ordained" testing results. When these fraudulent and perjurous evidentiary

fraud was found by the Petitioner's legal team here in the United States, with the assistance of independent experts, and briefed to both the Attorney General of the United States and the government of Mexico, the Mexican government has not only refused to reinvestigate the case, and to recant its government, but to accelerate its ungrounded persecution against the detainees and the petitioner. President Felipe Calderon repeatedly made nationally televised public address to announce his pre-judgment by declaring this Petitioner the "greatest drug kingpin in international drug cartel of methamphetamine mass production" (Exhibit #7) when the evidence has already been proven otherwise. When fraud was proven committed by Mexican government, while a fair laboratory testing of the 19 tons of legal chemical would definitely turns out the result the government does not want to face, the Mr. Medina Mora, the Attorney General ordered destruction of all 19 tons of chemical agents under the custody of 82nd infantry battalion. In the meantime, with the gradual exposure of the Mexican government's fraud in this instant case, the Mexican authorities has heightened its diplomatic pressure demanding extradition of the Petitioner back to Mexico. The Respondent, the Hon Alberto Gonzalez, and his related case workers, were repeatedly presented all these evidentiary fraud, and requested with demand for providing the petitioner with copies of all evidence. Nevertheless, the Respondent U.S. Department refused to study these evidence, in the meantime, refused to provide the legal team in the United States any evidence, including favorable evidence it collected from China. These actions and deliberate omission have apparently violated the professional ethics for all legal counsels, including the Attorney General. Instead, facing the apparent evidence of the Mexican government's serious fraud, the Respondent Attorney General made a poor judgment to accommodate the Mexican authorities' ungrounded, illegitimate demand for extradition of the Petitioner.

The later development has clearly indicated that all drug or drug derived accusations have collapsed due to fatal failure of incriminating evidence. Overwhelming evidence has accurately pinpointed that all frivolous, bizarre "illicit drug" related charges against Petitioner have been fatally collapsed and the Mexican authorities under the corrupted ruling party of PAN has committed frauds, perjury and defamation to defraud the international community in this very case.

Petitioner has never involved in any illicit drug trafficking, manufacturing or distribution of any illicit drugs through out his life (Please see the Petitioner's Affidavit Statement; his Complaint with InterAmerican Commission on Human Rights, and all selected supporting documentary evidence, Attachment A). Mexican government under current Calderon regime stubbornly admits its fiasco in this misfire burning innocent citizens, but to commit greater human rights abuses to cover up what they do not want the world to know by accelerating its abusive grip over the victims of this infamous showcase of international fraud.

With the Petitioner detained by the Federal Detention facilities, awaiting extradition from the United States to Mexico, may possibly vanished in half-way there, Petitioner is being faced with imminent life threatening risk of being even killed before his arrival of the final destination. With also the fact that the looming pre-judgment, an extra-judicial pronouncement of guilty of drug trafficking, illegally made by both Mexican President Felipe Calderon and its Attorney General Eduardo Medina-Mora. Petitioner will be doomed to unjustifiable demise should he be held in our country's jail for the purpose to be handed over to Mexican Authorities.

If the Petitioner is extradited from the United States into Mexico, because the Respondents, under the growing, abusive, retaliatory political and diplomatic pressures from an infamously corruptive Mexican authorities under the Presidency of Felipe Calderon, have

apparently attempted to surrender the Petitioner to Mexican Authorities, by extra-judicial expedience, or by-passing any judicial safe guarding procedures. Mexican authorities has been credibly believed to have committed all scandalous abuses involving failed assassination attempts, commission of internationally infamous fraud, state-sponsored massive defamation campaigns against the Petitioner. Mexican authorities has also been reportedly to have committed severe tortures against the loved ones of the Petitioners. Petitioner will be faced with imminent murder, assassinations, tortures and all other horrifying treatments once he left the land of the United States. If Respondents' on-going, life-threatening action in color of law is NOT halted by the Writ of Habeas Corps, an irreparable damages, including petitioner's loss of life or limbs will inevitably occur, because the corrupted Mexican regime has apparently determined to silence the Petitioner by expediting him to die.

## ARGUMENT

A. Respondents Probable Cause of Action Have Failed By Merits

The cause of action in this instant case is that the Petitioner has probably transacted, manufactured or distributed illegal drugs or controlled substances. Such a cause of action has completely failed. The fact that he has never involved in such an illegal business has been proven by the fact that the Mexican National Forensic Laboratory uninattentively revealed that what the Petitioner involved the shipment that he purchased and intended to purchase from the supplier: The People's Republic of China, "is neither psychotropic and/or narcotic drug, Nor is it a chemical precursors or essential chemical according to the Federal Law (of Mexico, see Mexican Government Case Dossier page 85898, Exhibit #8). Such a Government declared legitimate chemical IS what the Petitioner signed his contract to buy and what he Intended to buy from the People's Republic, the supplier. (See his contract #06AK0062) At this point, all Mexican accusations charging the Petitioner illicit drug and related, derived crimes has been completely collapsed due to the fact that Mexican government's own admission followed with the fact that the same government has committed serious fraud and perjury in fabricating critical

evidence of "illicit drugs". These facts, together with all necessary evidence, were briefed to both Mexican President Felipe Calderon and the Attorney General of the United States. Under the circumstances, the following illegal arrest, detention and extradition attempts should have no reason to take place unless our finding Mexican fraud has been adequately overcome.

Let's review the basic facts: Those 19 metric tons of chemical agents were supplied by an exporter, namely, China Chifeng-Arker Pharmaceutical Technology Co. Ltd., a subsidiary to Shanghai Enterprises Group, a PRC state owned enterprises, pursuant to the sales contract concluded between Unimed and Chifeng Arker (Please see the exhibit of Contract). According to the sales contract, the chemical agents my company purchased from the China supplier is: Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl-and Ephedrine Acetate".* Acetethamtne, or ACETAMIDE, is a proprietary key ingredients to produce variety of legitimate cold medicine, while the buyer has personal access to the cutting-edge know-how of such advanced technology. The buyer/importer's legitimate business purpose to import such legitimate chemical agents is also safeguarded with the fact that both Chifeng Arker and its parent company Shanghai enterprises are state-owned enterprises whose business activities are under the strict control and supervision of the government of the People's Republic, because the reputation of the PRC state is at stake if its enterprise, as an integral part of the PRC nation, is found to export, or attempt to export, any controlled substance, or precursor drugs to a foreign importer without both importing and exporting license.

Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl,* and Pseudoephedrine, are two completely different chemical properties; (Dr. Ingram's Independent Expert Opinion, Exhibit 8)

The chains of custody of these 19 metric tons of chemical agents are as follows: From Chinese supplier, to Mexican Customs, to Mexican Attorney General's designated custodian. The Petitioner is not part of exact chains of custody of the shipment, and naturally not liable if the shipment was altered during at any step from manufacturing until its arrival at the 82nd infantry batallion, designated place by the Attorney General of Mexico.

Now, having failed to find any evidence of drug trafficking, not even a single particle of illicit narcotic drug has ever been found at any places, what remains in dispute is the 19 metric tons of chemical agents that I imported from China without government license. These 19 tons of chemical agent is legitimate chemical agent, namely, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), the chemical itself whose pharmaceutical property was ascertained by Mexico's own forensic laboratory test while its legitimacy was also officially recognized by the same testing report. However, Mexican government argued that these chemical agents that I imported from China from 2005 through 2006 is "pseudo-ephedrine" in its contradictory national forensic laboratory testing. The allegation, together with so-called "scientific analytical report" is completely frivolous. All these chemical agents are harmless, lawful chemical products not under "controlled substance" list. Neither is it under the list of "analogue drugs". Based on several of independent chemists analytical reports, the following scientific findings are made, among others:

B. The Respondent's Cause of Action has Failed due to Mexican Government's Fraud

The cause of action has totally collapsed due to Mexican government's commission of fraud and perjury in forming the critical incriminating evidence.

Mexican Government has committed fraud and perjury in fabricating the incriminating evidence: "We treated the sample by adding chlorohydric acid and heat, we obtained the testing results of pseudoephedrine" Laboratory Analysis report Central Customs Administration, Mexican Government Case Dossier Page 19135, Exhibit #9)

The other National Forensic Lab testing also reveals that the sample was treated with "alkaline extraction" (Exhibit #10). Those contaminated procedures was severely criticized by such independent experts as Dr. Ingram and Dr, Brown, of University of Horward.

Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl,* and Pseudoephedrine, are two completely different chemical properties; (Dr. Ingram's Independent Expert Opinion, Exhibit 11) Mexican government has deliberately confused these two into one by fraud and perjury.

Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Id)

Characterization of the contraband as "pseudoephedrine" is "unfounded" (Exhibit 11, Id). Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Exhibit 11)

The Mexican Government's forensic examination is seriously flawed (Dr. Brown's Expert Opinion in support of Dr. Ingram's same findings. Exhibit 12)

By and through at least three correspondence, Respondent, the Hon. Alberto Gonzalez has been repeatedly briefed by the Petitioner's counsel concerning what sort of evidentiary fraud has been committed by the Mexican Authorities. Ning Ye, Esq., and Martin McMahon, Esq. have kept sending new evidence pin-pointing what sort of fraud and perjury having been made by the Mexican Authorities. Those evidentiary discovery have long rendered Mexican authorities "illicit drug" charges appear ***bizarre and frivolous,*** not just poor and lousy. Additionally, the U.S. Attorney General, the Respondent, has possessed critical evidence favorable to the Peitioner, collected from China side. The supplier of what is alleged "pseudo-ephedrine", a controlled substance, by Mexican Government, is Chifeng Arker Pharmaceutical Tech. Co. Ltd, a subsidiary under Shanghai Enterprises, a Blue Chip Company in Hong Kong Stock market, is a state-owned entity of the People's Republic of China. Key witnesses on China side, when USDEA's dispatched investigation task force was there in China's supplier side, all denied that the cargo exported from China had involved in any chemical precursors. Though the legal team for the Petitioner repeatedly requested the Attorney General's office to release all these key evidence to them. The U.S. law enforcement authorities under the leadership of the Respondent has never provided any single piece of such evidence and all other evidence to the Petitioner's legal team. These omissions have violated the generally accepted professional ethics while politicizing the case in order to accommodate the illegitimate demand from Mexican authorities.

B. MR. YE GON'S PERSON SHOULD BE PROTECTED UNDER FEDERAL WITNESS PROTECTION PROGRAM

Due to the fact that Mr. Ye Gon has possessed valuable information of sensitive and confidential information concerning widely spreading corrution, and election fraud by Ruling PAN Party concerning Mexican Presidential election in 2006, his personally safety and security should be placed under the U.S. Federal witness Protection programs. No attempts leading to physically eliminating him for the purpose to silence him once and ever should be allowed. For these reason, Mr. Ye Gon's illegitimate detention as the result of a corrupted foreign power's undue influence and unlawful pressure, should be immediately stopped with this Honorable Court's issuance of the Writ the Petitioner is praying for.

CONCLUSION

In the light of foregoing, the Respondent has no probable cause to arrest, detain and hand the Petitioner to the corrupt regime of Mexico. This Petitioner should e released on his own cognizance from the Federal Detention facilities. This may be a typical case for this Honorable Court to grant a "great Writ" of Habeas Corpus.. It is crystal clear that the United States Constitution itself, by its black letter text, guarantees that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." (U.S. Constitution, Article I, Section 9, Cl. 2) The "grand purpose of the writ of habeas corpus is the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." (Coalition of Clergy, lawyers and Professor vs. Bush, 189 F. Supp 2nd, 1036, 1039(CD Cal.2002))

Petitioner Zhenli Ye Gon, through her counsel, respectfully prays that the Writ of Habeas Corpus be properly issued in his favor.

Petitioner also respectfully prays that this case be tried by Jury pursuant to Rule 2-511.

Petitioner further respectfully prays for an immediate hearing under emergency situation. An oral argument is also respectfully prayed

RELIEF SOUGHT.

Petitioner respectfully pray that the following provisional injunctive relief and TRO are granted in favor of the Petitioner:

Writ of Habeas Corps in favor of Petitioner;

The Petitioner is released from any and all detention facilities without bond, in his own cognizance;

The Respondents are temporarily restrained from re-arresting, or extraditing the Petitioner from the United States into Mexico, or any other third country;

The Respondent airline is temporarily restrained from facilitating the respondent for the purpose to extradite the Petitioner into the country of Mexico, and from taking him to any places outside the territories of the United States.

Respectfully submitted

Petitioner Zhenli Ye Gon, by
Ning Ye, Esq. Off Counsel
Martin McMahon and Associates
1150 Connecticut Avenue, NW, #900
Washington, DC 20036
202-862-4343
202-828-4130
Email: Ynyale@aol.com
Bar #: MD26804

Affidavit Statement

I, Ning Ye, being duly sworn, deposes and says:

I am an attorney of good standing with this Honorable Court. I am retained by detainee Zhenli Ye Gon to defend her case. I am the counsel who involved in the negotiation with U.S. Law Enforcement and sponsored publicity campaign to clear up frivolous charges against Mr. Ye Gon on the latter's behalf, hopefully leading to his release by his own cognizance. I prepared this Urgent Petition based upon the truth and facts in the best of my knowledge and belief.

Ning Ye, Esq.
Petitioner Yang Yang, by
Ning Ye, Esq. Off Counsel
Martin McMahon and Associates
1150 Connecticut Avenue, NW, #900
Washington, DC 20036
202-862-4343
202-828-4130
Email: Ynyale@aol.com

07 1308

FILED

JUL 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# Affidavit Statement

Zhenli Ye Gon, being duly sworn, deposes and certifies, under the penalty of perjury, that the following of my sworn statement is true and correct:

I respectfully submit this Affidavit Statement in support of my complaint against the Government of Mexico for its gross violation of human rights against me, my family members and my employees in the color of "war on drugs", for the latter's gross violation of Article 5, Artcle 7, Article 21 and Article 24 of American Convention on Human Rights. This Petition may be timely pursuant to Article 46 of the Convention.

The Mexican government has wrongfully arrested and illegally detained my wife, my relatives and my employees, for government fabricated, fraudulent charges in violation of Article 7, of the Convention; for torturing all 11 inmates for no valid cause in violation of Article 6, and illegally taking, stealing and destroying my legitimate property in violation of Article 21 of Convention.

I am a citizen of Mexico of Chinese origin, currently residing at the United States of America. I emigrated into Mexico based on my marriage with my wife, Tomoiyi Marx-Yu, a Mexican citizen, in 1990. I became a naturalized citizen of Mexico in 2003. My permanent domicile house is located at Sierra Madre 515, Colonia Lomas de Chaputepec, Mexico City, Mexico. I am father of three minor children, all born in the United States. I am the owner and the CEO for Unimed Pharmaceutical, SA de CV, which is a giant pharmaceutical conglomerate involving 22 assembly lines using the most advanced cutting-edge technology from Germany, Italy, Switzerland and the United States. The investment program involves approximately 200 million US dollars.

I have been a law abiding citizen, without criminal records. I am also an ultra-successful business entrepreneur engaging in legitimate business activities for quite 20 years. My family and I have been living a peaceful life in the country of Mexico until March 16, 2007, when my house was suddenly raided by police forces under the command of Mr. The Honorable Modena-Mora, the Attorney General of Mexico. With fraudulently fabricated evidence, the Mexican government under His Excellency Felipe Calderon, the President of Mexico, planted all sort of fancy felonious charges as of "narcotic drug trafficking", "international drug kingpin" against me. Under these seriously wrongful charges, unsubstantiated with any evidence in favor of the Mexican government, My wife, a housewife who has never been involved in any politics or in my business matters, together with 10 other relatives and employees of mine, all of whom are completely irrelevant to these false charges against me, were arrested, and have been jailed since March 2007. Those completely innocent victims were severely, and continuously tortured in Mexican government custody, for the purpose to squeeze false incriminating evidence against me from their mouths.

07 1308

I am not a drug dealer, neither am I a drug lord, much less a drug kingpin. I have never transacted illegal narcotic drugs either by myself, or in association with any "drug cartel", let alone organizing and leading "drug cartel" in any place of the world at any time by

FILED

JUL 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

myself. The enterprises, namely, "Unimed Pharmaceutical SA de CV", any part, branches, subsidiaries thereof, is a lawful business organization, transacting lawful business in clean, neat and transparent manner.

2. I have never engaged in, by myself, or associated with any others, illegal narcotic drug trafficking, through out my life, since the day one of my birth, up till now; I have never consumed, tasted, inhaled, smoked, sold, bought, manufactured, processed, tested, distributed any illegal drugs, not even a single once, a single milligram:

3. I have never touched such staff as Safrole, MDMA, Methamphetamine, etc, through out my life;

4. I have never written, kept, or seen such "handwritten note" on how to make 20 tons of Safrole into MDMA or Methamephetamine; No records show that I have ever touched Safrole through out my life.

5. I purchased 22 Assembly lines using the state of arts technology from Germany, Italy for the purpose of mass production of multi-faceted legitimate pharmaceutical products. The world's most advanced technology I employed and bought is not to use for mass-production of such illegal drugs as MDMA, Methamephetamine. It is a simple and plain truth. I does not need to "buy" the USS Independence Aircraft carrier just for the purpose to smuggle a few cantons of illegal cigarettes.

6. I cannot say that I have never transacted in any chemical agents under "controlled substance" list in Mexico. During the period from 2002 through the end of 2003, I was lawfully transacted, imported and distributed "pseudo ephedrine" in Mexico, with the government permit, issued by the Federal Department of Public Health of Mexico. I was competing with the several other suppliers of Pseudoephedrine" in Mexico. All my government permitted transaction of pseudo ephedrine has been fully recorded, under the strict supervision by Mexican Department of Health. The quantity, the tonnage of the pseudo ephedrine that I have transacted, had never exceeded the quota set forth by the Mexican government, rather, the quantity I exactly transacted had never reached the maximum ceilings set forth by the Federal Department of Health and all rules and regulations were strictly followed under the supervision of the Department of Health. During the period, I simply made normal business profits by selling the pseudo-ephedrine to the government approved, government assigned legitimate buyers, under the control and supervision of the Department of Health. My log-book under the government supervision is neat and intact. I did not make, as the Attorney General claimed, cited by the Associated Press, several million dollars dirty money from selling these raw materials to the international drug cartels. The Attorney General's claims are false charges for the purpose to cover up its wrongful conducts.

7. When Mexican Government ceased to issue me the permit of transacting pseudo ephedrine, I immediately stopped importing, buying, selling, processing, distributing pseudo ephedrine".

8. In November 2006, the Mexican Government stated that its customs seized a 19 metric tons of chemical white powder", which the Mexican government mis-characterized as "Pseudoephedrine", a chemical agent under the list of controlled substance. Mexican government falsely accused me for "illegally" importing "pseudoephedrine" from China into the Seaport of Mexico, via Long Beach, California, USA. Mexican Government falsely argued that these 19 tons of chemical agents are "pseudoephedrine". The fact is that these 19tons of chemical agents are neither precursor chemicals, nor under the controlled substance list.

9. Those 19 metric tons of chemical agents were supplied by an exporter, namely, China Chifeng-Arker Pharmaceutical Technology Co. Ltd., a subsidiary to Shanghai Enterprises Group, a PRC state owned enterprises, pursuant to the sales contract concluded between Unimed and Chifeng Arker (Please see the exhibit of Contract, Bills of Ladings). According to the sales contract, the chemical agents my company purchased from the China supplier is: Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl-and Ephedrine Acetate"*. Acetethamtne, or ACETAMIDE, is such proprietary key ingredients as phenylephrine HCI, to produce variety of legitimate cold medicine, provided the buyer has personal access to the cutting-edge know-how of such advanced technology. The buyer/importer's legitimate business purpose to import such legitimate chemical agents is also safeguarded with the fact that both Chifeng Arker and its parent company Shanghai enterprises are state-owned enterprises whose business activities are under the strict control and supervision of the government of the People's Republic, because the reputation of the PRC state is at stake if its enterprise, as an integral part of the PRC nation, is found to export, or attempt to export, any controlled substance, or precursor drugs to a foreign importer without both importing and exporting license.

10. The chains of custody of these 19 metric tons of chemical agents are as follows: From Chinese supplier, to Mexican Customs, to Mexican Attorney General's designated custodian.

11. Now, having failed to find any evidence of drug trafficking, not even a single partical of illicit narcotic drug has ever been found at any places, what remains in dispute is the 19 metric tons of chemical agents that I imported from China without government license. These 19 tons of chemical agent is legitimate chemical agent, namely, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), the chemical itself whose pharmaceutical property was ascertained by Mexico's own forensic laboratory test while its legitimacy was also officially recognized by the same testing report. However, Mexican government argued that these chemical agents that I imported from China from 2005 through 2006 is "pseudo-ephedrine" in its contradictory national forensic laboratory testing. The allegation, together with so-called "scientific analytical report" is completely frivolous. All these chemical agents are harmless, lawful chemical products not under "controlled substance" list. Neither is it under the list of "analogue drugs". Based on several of independent chemists analytical reports, the following scientific findings are made, among others:

A. Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl,* and Pseudoephedrine, are two completely different chemical properties; (Dr. Ingram's Independent Expert Opinion, Exhibit 2)

B. B. Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Exhibit 2)

C. Characterization of the contraband as "pseudoephedrine" is "unfounded" B. Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Exhibit 3)

*D.* The Mexican Government's forensic examination is seriously flawed (Dr. Brown's Expert Opinion in support of Dr. Ingram's same findings. Exhibit 3)

*E.* "ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl is NOT considered by the General Health Law to be a psychotropic or narcotic drug, Nor is it a chemical Precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Chemical Products, and Machines for the Manufacture of Capsules, Tablets and/or Compressed Tablets." (Please refer to page 2 of the Mexican National Forensic Lab Testing Report, as translated into English,Original Case file Page 85898 of your government's case dossier, Exhibit 4)*

*F.* Mexican government's own forensic testing reports have destroyed its Attorney General's allegation that the 19 metric tons of chemical agents exported by Chinese supplier under the sales contract is the proof of my company, Unimed's criminal act of "pseudoephedrine", a chemical agents under controlled substance, namely, "crimes against public health". If, according to Mexican Government's own finding, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as "ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl" is NOT considered by the General Health Law to be a psychotropic or narcotic drug, Nor is it a chemical Precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Chemical Products, and Machines for the Manufacture of Capsules, Tablets and/or Compressed Tablets.", then, all documentary evidence including my purchase contracts, bills of lading, packing lists, all indicated my legitimate purpose: to purchase* Acetethamtne from Chifeng-Arker Pharmaceutical company, and the implementation of my lawful purpose, say, completion of my legitimate act, leading to such **designated** chemical agents to be shipped to its destination. If the Mexican Government later argued that the chemical agents, after **fraudulent treatment** under the chains of custody of Mexican

government, it found "ingredient of pseudo-ephedrine", such a finding is irrelevant. Because the chains of custody of the cargo in question is directly from the hand of Chinese Exporter to that of Mexican government. My company and I are not in the chains of custody.

12. According to Forensic Examination conducted by the National Forensic Laboratory under attoney general's office, it confirms the finding of the chemical property of Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl, a proper characterization and identification of the chemical agents exported by the PRC supplier to Unimed, intercepted by the Mexican Customs:*

Conclusions: First-The six (6) samples of the previously described white, granular substance in this report consist of a mixture of ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl-and Ephedrine Acetate". (Please refer to (Please refer to page 2 of the Mexican National Forensic Lab Testing Report, as translated into English,Original Case file Page 85898 of your government's case dossier, Exhibit #5) Here the quantity and ratio of "ephedrine" is not clear.*

With the total collapse of all incriminating evidence, Mexican authorities' "illicit drug charges" against me and my family members, my employees, and my companies have totally collapsed. However, the Attorney General's office under the Calderon Administration has determined to continue this failed and scandalous prosecution, for the mere purpose to deceive the international community. Mexican Government has even accelerated the persecution against 11 innocent inmate, including my wife, by using internationally prohibited tortures. The ulterior motive of these government committed offenses against universally accepted international legal norms is that the Government intended, in bad faith, to cover up a scandals behind so-called $207 million so-called "illegal drug money" dug out from my residence. Most of the cash found in my residence, the stacks of $100 bills, is actually the PAN Party's secretive Presidential Campaign funds, entrusted to my residential house, under the order of Mr. Javier Larzano Alarcon and his associates, with the escort of the unformed police and police vehicles, from May 2006 through September 2006. I reluctantly took the dangerously fiduciary duty as the custodian of such funds because Mr. Javir Alarcon threatened me if I did not cooperate with the National Action Party as following his order to take custody of these money, my throat will be cut. If I were not falsely tarnished to be a "drug lord", running an "international drug cartel", the scandal of PAN's secretive campaign funds would be exposed to the world.

The whole scheme around the collapsed "drug" charges against me and my beloved ones, my employees, and my companies, are an on-going, government sponsored international fraud. The Mafioso forces behind Mexican law enforcement have designed and devised to silenced me forever, after completely ripped me off my hard-earned property through my 20-year legitimate business activities and thoroughly tarnished my reputation.

The Mexican government has also incited ultra-raciest hatred against me. My pictures were hung on out of the Unimed Construction worksite everywhere under the Government control now, with such emotional slogans as "kill, kill, kill!!!" At least two assassination attempts were made at my immediate relatives residential house at Las Vegas, Navada, USA. The most recent failed assassination attempt was recorded by John, 70-year Caucasian man and his wife, the tenant of a House under my relative's name in Las Vegas, Navada. On July 5, 2007, John, the tenant of my relative's house, vividly described that 4 suspicious men, falsely claiming to be law enforcement task force dispatched by the DEA, kicked and broke the front door of the house, trying to find me and kidnap or kill me. When my relatives inquired about the this incident to U.S. DEA, the officials denied its involvement. The DEA's inquiry with the Metropolitan police authority also turned out that there was no such dispatch.

Due to the fact that I am in imminent life threatening risk, should I physically appear in Mexico, I am unable to exhaust the local judicial remedy by going back to Mexico. Additionally, my legal counsels in the United States have exhausted their efforts, in representing me, to propose communicating with Mexican government, via its diplomatic envoy in the United States, to lay out tables and working schedules leading to solution of mutual understanding of this case, these reasonable proposals were flatly rejected. While these efforts were defamed and officially condemned by the Mexican Government on July 2, 2007, followed with renewed assassination attempts on July 5, 2007. Therefore, grounds of waiver pursuant to Artcle 46(2). The life threatening risk looming over me by Mexican regime for political retaliation as well as for the purpose to silence me, a knowledgeable key witness of the PAN's Presidential campaign frauds, once and ever, have also prompted me to apply for asylum in the United States. The same cause also prompted me to seek habeas corps relief. In the wake of abusively used tortures against my relatives endlessly jailed in Mexican prison, I have to apply for relief under Torture Convention.

Should I am turned into the hands of corrupted Mexican authorities, I will definitely be tortured and killed instantly and quietly.

For further questions and concerns about this matter, you may also contact my counsel Ning Ye, Esq. At 301-641-7345. Further affiant sayth naught.

---

I hereby certify that my foregoing statement made under penalty of perjury is true and correct.

Subscribed and sworn to before me on this 20th day of July, 2007

______________________________

Notary public:
My commission expires on ______________________.



**USA B1/B2 VISA/BCC**

NAME YE GON, ZHENLI

Birthdate 01/31/63 Sex M

Nationality MEX

VISA/BCC EXPIRES 09/08/13

VISA/BCC ISSUED 09/09/03

U.S. Employment NOT Authorized

VBUSA8120003<<0<MEX001032836<<
6301318M1309087MEXMEX2003231<0
YE<GON<<ZHENLI<<<<<<<<<<<<<<<<<

07 1308

FILED

JUL 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



Departure Number

882526307 11

Department of Homeland Security

CBP I-94 A (11/04)
Departure Record

B2
CAR07432
JAN 3 1 2007
Mar 03 2007

| Family Name | |
|---|---|
| YE GON | |
| First (Given) Name | Birth Date (Day Mo Yr) |
| ZHENLI | 31 01 63 |
| Country of Citizenship | |
| MEXICO | |

20070131 US-VISIT 20070131 MULTIPLE

La Secretaría de Relaciones Exteriores de los Estados Unidos Mexicanos solicita a las autoridades competentes que permitan al titular de este pasaporte de nacionalidad mexicana su libre paso sin retraso u obstáculo alguno y, dado el caso, le otorguen toda la asistencia y protección posibles.
The Ministry of Foreign Affairs of the United Mexican States hereby requests all competent authorities to permit the holder of this passport, a Mexican national, free transit without delay or hindrance and in case of need to give him all lawful aid and protection.
PASAPORTE
Estados Unidos Mexicanos
Clave del país de expedición
MEX
Pasaporte No.
03340003450
Apellidos
YE GON
Nombres
ZHENLI
Nacionalidad
MEXICANA
Fecha de nacimiento
31 01 1963
Sexo
M
Lugar de nacimiento
SHANGHAI, CHINA.
Fecha expedición
06 02 2003
Autoridad
Fecha caducidad
CUAUHTEMOC
ESTADOS UNIDOS

**C. ZHENLI YE GON**
**Presente**

De acuerdo a la facultad que nos confiere la Ley Orgánica del Congreso de la Unión y reglamento de gobierno interior del Gobierno General, así como el acta constitutiva del Grupo Parlamentario del PRI, se extiende el presente nombramiento como:

**ENLACE LEGISLATIVO**

Para los efectos legales correspondientes

**Senador Lic. Fidel Herrera Beltrán**
PRESIDENTE DE LA COMISIÓN DE ESTUDIOS LEGISLATIVOS

H. Xalapa, Veracruz, Ignacio de la Llave
a Julio 7, 2003



中华人民共和国外交部请各国军政机关对持照人予以通行的便利和必要的协助。

*The Ministry of Foreign Affairs of the People's Republic of China requests all civil and military authorities of foreign countries to allow the bearer of this passport to pass freely and afford assistance in case of need.*

签发日期 2003 年 09 月 18 日　签发地点 墨西哥城

Date of issue 18 SEP. 2003　Place of issue MEXICO CITY

YE ZHENLI

| 性别 Sex | 身份 Profession | 婚姻状况 Marital status |
|---|---|---|
| 男 M | | |

| 出生日期 Date of birth | 出生地点 Place of birth |
|---|---|
| 1963.01.31<br>31 JAN. 1963 | 上海<br>SHANGHAI |

有效期至 Date of expiry 2004.09.17 17 SEP. 2004

身份证号码 Identity card No.

赤峰艾克制药科技股份有限公司
CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD.
地址：中国内蒙古赤峰市红山区清河路北段 邮政编码 P.C.: 024001
Add.: North Qinghe road, Hongshan District, Chifeng, Inner Mongolia 024001, CHINA
电话 Tel.: 86 476 8243939 传真 Fax: 86 476 8243477
E-mail: arker@263.net Web.: http://www.arker.com.cn

Exhibit #5 Exhibit #1

# 售货合同
# SALES CONTRACT

编号 NO.: 06AK0062
日期 DATE: OCT. 18, 2006
签约地 SIGNED AT: CHIFENG, CHINA

买方 Buyer(s): Unimed Pharmaceutical S.A. de C.V.
地址 Add.: Morelos No.24 Col. Centro 06040 Mexico D.F.
兹确认售予你方下列货品，其成交条款如下：
We hereby confirm having sold to you the following goods on terms and conditions as specified bellow:

| | |
|---|---|
| (1)货物名称 Name | 1-(N-甲基-乙酰氨基)乙基-苯甲醇<br>HYDROXY BENZYL-N-METHYL ACETETHAMTNE |
| (2)数量 Quantity | 19,797KG |
| (3)单价 Unit price | USD35.00/KG CIF MEXICO CITY |
| (4)金额 Amount | USD692,895.00 SAY U.S. DOLLARS SIX HUNDRED NINETY TWO THOUSAND AND EIGHT HUNDRED NINETY FIVE ONLY |

(5)包装：25 公斤/纸板桶
Packing: IN 25KG NET FIBRE DRUMS

(6)质量标准：内控标准
Specification: IN HOUSE SPECIFICATION

(7)装运港及目的港：由天津港海运至墨西哥城
Loading port: FROM TIANJIN SEAPORT TO MEXICO CITY BY SEA

(8)装运期：2006 年 10 月 30 日前
Time of shipment: BEFORE OCT. 30, 2006

(9)保险：由卖方办理
Insurance: TO BE INSURANCED BY SELLER

(10)付款条件：预付
Terms of payment: ⊙T/T IN ADVANCE
如果买方不能按此付款条件执行，售方有权不经通知取消本合同书，或接受买方对本合约未执行的全部或部分，或对因此遭受的损失提出索赔。
If the buyer(s) fails to fulfill this term of payment, the seller(s) reserves the right to rescind this Sales Contract without further notice or to accept whole or any part of this Sales Contract non-fulfilled by the buyer(s) or to lodge a claim for direct losses sustained.

(11)品质/数量异议：如果买方提出索赔，凡属品质异议须于货到目的口岸之日起 30 天内提出，凡属数量异议须于货到目的口岸之日起 15 天内提出，对所装货所提任何异议属于保险公司，轮船公司及其他有关运输机构或邮递机构所负责者，售方不负任何责任。
Quality/Quantity discrepancy: In case of quality discrepancy, claim should be filed by the buyer(s) within 30 days after the arrival of the goods at port of destination, while for quantity discrepancy, claim should be filed by the buyer(s) within 15 days after the arrival of the goods at port of destination. It is understood that the seller(s) shall not be liable for any discrepancy of the goods shipped due to cause for which the Insurance Company, Shipping Company and other transportation organization / or Post Office are liable.

(12)本合同内所述全部或部分商品，如因人力不可抗拒原因，以至不能履约或延迟交货，售方概不负责。
The seller(s) shall not be held liable for failure or delay in delivery of the entire lot or a potion of the goods under this Sales Contract in consequence of any Force Majeure incident

(13)买方于收到本售货合同后请立即回签一份，如买方对本合同有异议，应于收到后五天内提出，否则认为买方已同意接受本合同所规定的各项条款。
The buyer(s) is requested to sign and return one copy of this Sales Contract immediately after receipt of the same. Objection, if any, should be raised by the buyer(s) within 5 days after the receipt of this Sales Contract, in the absence of which it is understood the buyer(s) has accepted the terms and conditions of the Sales Contract.

(14)仲裁：凡因执行本合同所发生的或与本合同有关的一切争议，应由双方通过友好协商解决，如果协商不能解决，应提交中国国际经济贸易仲裁委员会，根据该会的仲裁规则进行仲裁。仲裁裁决是终局的，对双方都有约束力。
Arbitration: All disputes arising from the execution of, or in connection with this contract, shall be settled amicably through friendly negotiation. In case no settlement can be reached through negotiation, the case shall then be submitted to China International Economic And Trade Arbitration Commission in Beijing, for arbitration in accordance with its provisional rules of procedure. The arbitral award is final and binding upon both parties.

卖方 The Seller(s):
赤峰艾克制药科技股份有限公司
CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD.

Sales Manager:

General Manger:

买 方 The Buyer(s):
UNIMED PHARMACEUTICAL S.A. DE C.V.

Signature:

CHIFENG ARKER PHARMACEUTICAL TECHNOLOGY CO., LTD 赤峰艾克制药科技股份有限公司 合同专用章

Ex 2

| Name of Product<br>物质名称 | Acetethamtne<br>乙基-苯甲醇 | Pseudoephedrine Hcl<br>盐酸伪麻黄素 | Ephedrine 麻黄素 |
|---|---|---|---|
| Molecular Structure<br>分子结构 | $C_{12}H_{17}O_2N_1$ | $C_{10}H_{16}ClNO$ | $C_{10}H_{15}NO$ |
| Chemical Structure<br>化学结构 | OH CH CH₂CH₃ N CH₃ C=O CH₃ | H OH H N CH₃ · HCl H CH₃ | HO H H N CH₃ H₃C H |
| Molecular Weight<br>分子重量 | 207 | 201 | 165.23 |
| Controlled Substance<br>控制物品 | No 否 | Yes 是 | Yes 是 |

HOWARD UNIVERSITY

College of Pharmacy, Nursing and
Allied Health Sciences
School of Pharmacy

Ning Ye, Esq.
Attorney at Law
Washington, DC Office
1150 Connecticut Ave. #900, NW
Washington, DC 20036

July 13, 2007

Dear Attorney Ning Ye:

As an addendum to my previous review of the documents involving the analysis of the white powder substance confiscated from UNIMED Pharmaceutical, additional observations are noted.

- Conclusions made in the Chemical Forensics documents indicated that the white powder substance confiscated from UNIMED Pharmaceutical was determined to be a mixture containing acetamide. In the documents, acetamide was described as a substance that was considered by the General Health Law to be neither a narcotic drug nor a precursor to such illicit drugs.
- However, a report from the Customs Administrator suggests that the white powder substance confiscated from UNIMED Pharmaceutical did not contain acetamide, but instead consisted SOLELY of a substance characterized as a derivative of the alleged controlled contraband. These

2300 4th Street, NW
Washington, DC 20059

Telephone 202 806 6530
Facsimile 202 806 4636
www.howard.edu

conclusions were determined only after exposing the sample to harsh chemical conditions and heat.

Clearly the two reports are contradictory; thus serious inaccuracies in the documented analysis of the white powder substance are exposed. Given the stated inaccuracies, the methods for characterization should be further scrutinized. For example, it is my professional opinion that preferred methods of characterization involve procedures that do not alter the chemical make-up of the sample under investigation. Yet, the analysis of the white powder substance as documented in the Customs Administrator report appears to be based on results obtained AFTER the sample was exposed to chlorohydric acid and heat. Since there is no other evidence in the Customs Administrator report to support the true identity of the white powder BEFORE exposure to the harsh chemical environment, the report is deemed scientifically unreliable.

Sincerely,

LaVerne L. Brown

LaVerne L. Brown, Ph.D.
Assistant Professor
Howard University
Department of Pharmaceutical Sciences

#4

Destruction of Key Evidence !!!

<Pg 1>
<seal: UNITED MEXICAN STATES, OFFICE OF THE ATTORNEY GENERAL FOR THE REPUBLIC>

ASSISTANT OFFICE FOR THE INVESTIGATION OF ORGANIZED CRIME

<handwritten: 333> #4
A.P. PGR/SIEDO/UNEIDCS/191/2006.

RESOLUTION ORDERING THE FINAL DESTINATION OF THE WHITE-COLORED SUBSTANCE IN CONTAINER NUMBER PONU 1424478.

17325

In Mexico City, the Federal District, on the 28th (twenty-eighth) day of May in the year 2007 (two thousand seven)-----------------------------------------------

<obscured by seal> the records and proceedings contained in the present criminal investigation, for resolution with respect to the final destination of the white-colored substance contained in 849 (eight hundred forty-nine) barrels in Container number PONU 1424478, kept in the interior of the facilities of the 82 Infantry Battalion <obscured by seal> in Lazaro Cardenas, Michoacan.-----------------------------------

---------------------FINDINGS OF FACT----------------------------------------------------

----- A). – On October 13th of the year two thousand six, criminal investigation number PGR/SIEDO/UEIDCS/AC/191/2006 was begun upon initiation of detailed report number PGR/SIEDO/UEIDCS/AC/399/2006 against ZHENLI YE GO, GEORGINA AGUILLON ORTIZ, JUAN JOSE ESCANDON PAZ, and any others who are responsible for the crimes in VIOLATION OF THE FEDERAL LAW AGAINST ORGANIZED CRIME and CRIMES AGAINST HEALTH and those that result in offense to society.

----- B). On February 28th of the year 200- <last digit obscured by marking>, official communication number 563 was received, dated the twenty-sixth of February, year two thousand seven, signed by Atty. Sergio Alberto de Leon Azua, an official from the Office of the Public Prosecutor for the Federation, by means of which criminal investigation number AP/PGR/MICH/LC/150/06 was remitted to the SIEDO due to INCOMPETENCE, and by which the disposition of container number PONU 1424478, with tracking number 51139587, containing the white-colored, granular substance evaluated by institutional scientists, who concluded that it contained ACETAMINE and EPHEDRINE ACETATE, was left in the facilities of the 82nd Infantry Battalion.

----- C). Security Order dated December 2, year Two Thousand and Six regarding container number PONU 1424478, which contains a white, granular substance.

---------------------REASONING OF LAW-----------------------------------------

--- First. – That articles 16, first paragraph, 21 and 102, Section A of the Political Constitution of the United Mexican States; 40 and 41 of the Federal Criminal Code; 1st subsection 1, 2nd subsection IX, 104, 123, 181, 182, and 183 of the Federal Criminal Procedure Code; 1 subsection 1, 2, 3, 5, and 7 of the Federal Law for the Administration and Transfer of Goods in the Public Sector; 4 of the Organic Law of the Office of the Attorney General of the Republic; and 1st, 27, and 28 of its Regulations, this Social Representation of the Federation is competent to order the DESTRUCTION of the WHITE-COLORED POWDERY and GRANULAR substance identified as

EPHEDRINE ACETATE, a substance considered by the General Health Law to be PSYCHOTROPIC and considered to be a CHEMICAL PRECURSOR by the Federal Law for the Control of Chemical Precursors, Essential Chemical Products, and Machines for the Manufacture of Capsules, Tablets, and/or Compressed Tablets.-----. ----------------
--- Second. – That within the present Criminal Investigation, along with the previously mentioned items, the following items are noted for their importance: -----------------------
--- 1. – Initiation Order for criminal investigation number PGR/SIEDO/UEIDCS/191/2006, dated October thirteenth of the year two thousand six, executes the initiation of detailed report number PGR/SIEDO/UEIDCS/AC/399/2006 against ZHENLI YE GO
<End Pg 1>

<logo: UNITED MEXICAN STATES, GENERAL PROSECUTOR'S OFFICE OF THE REPUBLIC>

#5

COORDINATION OF INSTITUTIONAL PLANNING, DEVELOPMENT, AND INNOVATION

GENERAL OFFICE FOR COORDINATION OF EXPERT WITNESS SERVICES
<handwritten and circled: 130>

EXECUTIVE OFFICE OF LABORATORIES

OFFICE OF THE CHEMICAL LABORATORY

CHEMICAL FORENSICS DEPARTMENT
PAGE: 85898
AP/PGR/MICH/LC/158/2006

ISSUE: CHEMICAL REPORT RENDERED
Mexico City, December 04, 2006

MR. SERGIO ALBERTO DE LEON AZUA.
Officer of the Prosecuting Office of the Federation
Director of the Lazaro Cardenas Agency.
City of Lazaro Cardenas, Michoacan.
Hand delivered.

REPORT

Approaching the Problem:
It was requested that we determine the chemical natural of a white, granular substance which was contained in six containers made from a clear, synthetic material with a white lid made of the same material, marked 1, 2, 3, 4, and sample 1' was taken from the front of the container PONU 142447/8 dated 12/02/06 and sample No, 2' was taken from the central part of the container PONU 142447/8 dated 12/02/06, and all of the rest was placed in a bag of transparent synthetic material, for the motive of discerning whether the substance belonged to the groups considered to be psychotropic or narcotic drugs according to the General Health Law or chemical precursors and/ or essential chemical products.
<stamp: illegible>

TECHNIQUES EMPLOYED
Infrared Photospectrometry
Gas Chromatography Coupled with Mass Spectrometry
Mass Spectrometry by Direct Insertion Probe

RESULTS
With spectrometry in the infrared region of the electromagnetic spectrum, applied to the products of alkaline extraction from the questioned samples, subsequent to hydrolysis, spectrums were obtained with bands of absorption characteristic of EPHEDRINE (spectrums attached).

I hereby certify that the attached document is a true and exact copy of a Lab Report, presented (type of document) this 18 day of June 2007
Notary Public
My commission expires Oct 31, 2008

<logo: UNITED MEXICAN STATES, GENERAL PROSECUTOR'S OFFICE OF THE REPUBLIC>

COORDINATION OF INSTITUTIONAL PLANNING, DEVELOPMENT, AND INNOVATION

GENERAL OFFICE FOR COORDINATION OF EXPERT WITNESS SERVICES
<handwritten and circled: 131>

EXECUTIVE OFFICE OF LABORATORIES

OFFICE OF THE CHEMICAL LABORATORY

CHEMICAL FORENSICS DEPARTMENT
PAGE: 85898
AP/PGR/MICH/LC/158/2006

After applying the Gas Chromatography Coupled with Mass Spectrometry technique to the samples as well as their extracts using a 30-meter capillary column with a stationary methylphenyl silicone phase at 5% and ultra-pure helium as a mobile phase, chromatographs were obtained with retention times characteristic of a mix of EPHEDRINE ACETATE and ACETAMIDE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl-, and upon monitoring by Mass spectrometry, caused a mass/charge spectrum with a fragmentation pattern characteristic of EPHEDRINE ACETATE and ACETAMIDE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl- (Chromatographs and mass spectrums are attached).

The molecular ion (M+1) 208 was obtained by means of Direct Insertion Mass Spectrometry, which corresponds to the molecular weight plus one of EPHEDRINE ACETATE.

Based on the information above, the following conclusions have been formulated:

CONCLUSIONS

FIRST.- The six (6) samples of the previously described white, granular substance in this report consist of a mixture of ACETAMIDE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl- and EPHEDRINE ACETATE .

SECOND.- ACETAMIDE, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-methyl- is NOT considered by The General Health Law to be a psychotropic and/ or narcotic drug, NOR is it a chemical precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Essential Chemical Products, and Machines for the Manufacture of Capsules, Tablets, and/ or Compressed Tablets.

THIRD.- EPHEDRINE ACETATE is a chemical derivative of EPHEDRINE, which is considered by the General Health Law to be a Psychotropic drug, and is considered to be a Chemical Precursor by Federal Law for Control of Chemical Precursors, Essential

<letterhead: SECRETARY OF THE TREASURY

<logo: SAT>

619

<handwritten and circled: 11A>

<illegible number ending in ENE-2346>
TAX ADMINISTRATION SERVICES
GENERAL CUSTOMS ADMINISTRATION
CENTRAL ADMINISTRATION OF LABORATORIES AND SCIENTIFIC SERVICES
ADMINISTRATION OF SCIENTIFIC SERVICES

NUM: 326- SAT- IX- C-. 19135
FILE: 326. 02. 02/879

Issue: Analysis Report
"2006, Bicentennial Year of Natalicio de Benemerilo de las Americas, Don, Benito Juarez Garcia"

Mexico City, April 20, 2006

CUSTOMS ADMINISTRATOR AT MANZANILLO.
AV. AZUETA S/N EDIF FEDERAL 1er.
PISO COL. BURÓCRATA.
C.P. 28200 MANZANILLO, COL.

Based on article 38 of the Federal Tax Code, articles 43 to 45 of the Customs Law, 60 to 67 of the Customs Law Regulations, 8 section III of the Tax Administration Services Law, 2, 9, section II, 10 sections XIX, XLIII and XLVIII and II including subsection B of the Internal Regulations for the Tax Administration Services, the undersigned hereby relays to you the analysis results for the merchandise sample taken through sampling form 160-03026/ 2005, dated December 13, 2005, created in this customs office, for the purpose of identifying the merchandise under declaration 3052-5002544, dated December 12, 2005, processed by customs officer NELSON PRIDA BARRIO for the importer UNIMED PHARMCHEM MEXICO, S.A. DE C.V., in which the merchandise was declared as N-METHYL-ACETYLAMINO, under section <partially illegible> .11.99, and whose results are described below:
Description: A WHITE POWDER
Results: THE SAMPLE ANALYZED IS N-ACETYL PSEUDOEPHEDRINE, WHOSE CHEMICAL NAME IS N-ACETYL-D-2-METHYLAMINO-1-PHENYL-PROPAN-1-OL, A DERIVATIVE OF THE ALKALOID OF THE EPHEDRINE FAMILY, WHOSE DEFINED CHEMICAL MAKEUP IS SOLELY PRESENTED.
THIS IS NOT N-METHYL-ACETYLAMINO.

THIS COMPLIES WITH THE TEXT OF PART 29. 39 ON THE RATES OF THE LAW FOR GENERAL IMPORT AND EXPORT TAXES. HOWEVER, THE SECTION THAT SHOULD HAVE BEEN APPLIED IS 2939.99.99

WE TREATED THE SAMPLE BY ADDING CHLOROHYDRIC ACID AND HEAT, WE OBTAINED THE TESTING RESULTS OF PSEUDOEPHEDRINE

hereby certify that the attached document is a true and exact copy of a Lab Reports (type of document) presented before me this 18 day of June 2007
Notary Public
My commission expires Oct 31 2008

CHLOROHYDRATE, WHICH IS A CHEMICAL PRECURSOR USED IN THE CLANDESTINE MANUFACTURE OF AMPHETAMINES; BECAUSE OF THIS IT IS SUBJECT TO SPECIAL VERIFICATION AND CONTROL MEASURES UNDERTAKEN BY THE SECRETARY OF HEALTH.

METHODOLOGY. INFRARED FOURIER TRANSFORM SPECTROSCOPY, MASS SPECTROMETRY, PROTONIC MAGNETIC RESONANCE SPECTROMETRY, AND QUALITATIVE CHEMICAL ANALYSIS.

SINCERELY,
THE ADMINISTRATOR OF SCIENTIFIC SERVICES
<signature>
Q. I. JOSE FERNANDO JAUREGUI ZAVALA.

<illegible stamp>

JFJZ/AMSR/mrrh

COORDINACIÓN DE PLANEACIÓN, DESARROLLO E INNOVACIÓN INSTITUCIONAL

PROCURADURÍA GENERAL DE LA REPÚBLICA

DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES

DIRECCIÓN EJECUTIVA DE LABORATORIOS

DIRECCIÓN DEL LABORATORIO DE QUÍMICA

DEPARTAMENTO DE QUÍMICA FORENSE

**FOLIO:85898**

**AP/PGR/MICH/LC/158/2006**

Exhibit #4

130

#6

**ASUNTO**: SE RINDE DICTAMEN QUÍMICO

Ciudad de México, a 04 de Diciembre de 2006

**Licenciado**
**SERGIO ALBERTO DE LEON AZUA.**
Agente del Ministerio Público de la Federación
Titular de la Agencia Lázaro Cárdenas.
Cd. Lázaro Cárdenas, Michoacán.
Presente

Los que suscriben Peritos Químicos Oficiales de esta Institución, designados para intervenir con relación a su petición, rinden el siguiente:

**DICTAMEN**

**Planteamiento del Problema:**
Se nos solicito determinar la naturaleza química de la sustancia granulosa de color blanco, contenida en seis recipientes de material sintético transparente con tapa del mismo material en color blanco, marcados como 1, 2, 3, 4 y muestra 1' frente del contenedor PONU 142447/8 fecha 02/12/2006 y Toma de muestra N° 2' Parte Central del contenedor PONU 142447/8 fecha 02/12/2006, todo lo anterior contenido en una bolsa de material sintético transparente, corresponde a alguno de los psicotrópicos o estupefacientes de los considerados como tales por la Ley General de Salud o como precursor químico y/o producto químico esencial.

**TÉCNICAS EMPLEADAS**

Espectrofotometría de infrarrojo
Cromatografía de Gases Acoplada a Espectrometría de Masas
Espectrometría de Masas de Incersión Directa

**RESULTADOS**

Por Espectrometría en la región infrarrojo del Espectro electromagnético, aplicada a los productos de extracción alcalina de las muestras cuestionadas, previa hidrólisis, se obtuvieron espectros con bandas de absorción características de **EFEDRINA** (se anexan espectros).

SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

SERVICIO DE ADMINISTRACION TRIBUTARIA
ADMINISTRACION GENERAL DE ADUANAS
ADMINISTRACION CENTRAL DE LABORATORIO
Y SERVICIOS CIENTIFICOS
ADMINISTRACION DE SERVICIOS CIENTIFICOS
NUM: 326-SAT-IX-C-. 19135
EXP: 326.02.02/879

SAT

**Asunto: Dictamen de Análisis.**

"2006, Año del Bicentenario del natalicio del Benemérito de las Américas, Don Benito Juárez García".

México, D.F., a 20 de abril de 2006

C. ADMINISTRADOR DE LA ADUANA DE MANZANILLO.
AV. AZUETA S/N EDIF. FEDERAL 1er.
PISO COL. BUROCRATA.
C.P. 28200 MANZANILLO, COL.

Con fundamento en el artículo 38 del Código Fiscal de la Federación, en los artículos 43 al 45 de la Ley Aduanera, 60 al 67 del Reglamento de la Ley Aduanera, 3 fracción III de la Ley del Servicio de Administración Tributaria y 2, 9 fracción II, 10 fracciones XIX, XLIII y XLVIII y 11 inciso B del Reglamento Interior del Servicio de Administración Tributaria, el que suscribe le comunica el resultado de análisis de la muestra tomada a la mercancía con acta de muestreo 160-03026/2005 de fecha 13 de diciembre de 2005, levantada en esa Aduana con motivo del reconocimiento aduanero practicado a la mercancía amparada con el pedimento 3052-5002544 de fecha 12 de diciembre de 2005, tramitado por el Agente Aduanal NELSON PRIDA BARRIO a favor del importador UNIMED PHARMCHEM MEXICO, S.A. DE C.V. en el que declaró la mercancía como N-METHY-ACETYLAMINO, a la fracción 2921.11.99, dictamen cuyo resultado a continuación se precisa:

Descripción: POLVO COLOR BLANCO

Dictamen: LA MUESTRA ANALIZADA ES N-ACETIL PSEUDOEFEDRINA, CUYO NOMBRE QUIMICO ES N-ACETIL-D-2-METILAMINO-1-FENIL-PROPAN-1-OL DERIVADO DEL ALCALOIDE DEL GRUPO DE LAS EFEDRINAS, DE CONSTITUCION QUIMICA DEFINIDA PRESENTADO AISLADAMENTE.
NO SE TRATA DE N-METHYL-ACETYLAMINO.

CUMPLE CON EL TEXTO DE LA PARTIDA 29.39 DE LA TARIFA DE LA LEY DE LOS IMPUESTOS GENERALES DE IMPORTACION Y EXPORTACION. POR LO TANTO LA FRACCION ARANCELARIA QUE DEBE SER APLICADA ES 2939.99.99

AL TRATAR LA MUESTRA CON ACIDO CLORHIDRICO EN CALIENTE, SE OBTIENE EL CLORHIDRATO DE PSEUDOEFEDRINA QUE ES UN PRECURSOR QUIMICO UTILIZADO EN LA ELABORACION CLANDESTINA DE ANFETAMINAS, POR LO QUE ESTA SUJETO A VERIFICACION ESPECIAL Y A MEDIDAS DE CONTROL POR PARTE DE LA SECRETARIA DE SALUD.
METODOLOGIA. ESPECTROSCOPIA DE INFRARROJO CON TRANSFORMADA DE FOURIER, ESPECTROMETRIA DE MASAS, ESPECTROMETRIA DE RESONANCIA MAGNETICO PROTONICA Y ANALISIS QUIMICO CUALITATIVO.

ATENTAMENTE.
EL ADMINISTRADOR DE SERVICIOS CIENTIFICOS

Q.I. JOSE FERNANDO JAUREGUI ZAVALA.

JFJZ/AMSR/mrrh

COORDINACIÓN DE PLANEACIÓN, DESARROLLO E INNOVACIÓN INSTITUCIONAL

PROCURADURÍA GENERAL DE LA REPUBLICA

DIRECCIÓN GENERAL DE COORDINACIÓN DE SERVICIOS PERICIALES

DIRECCIÓN EJECUTIVA DE LABORATORIOS

DIRECCIÓN DEL LABORATORIO DE QUÍMICA

DEPARTAMENTO DE QUÍMICA FORENSE

**FOLIO:85898**

**AP/PGR/MICH/LC/158/2006**

Al aplicar la técnica de Cromatografía de Gases acoplada a Espectrometría de Masas sobre las muestras así como a sus extractos , empleando una columna capilar de 30 metros de longitud, con fase estacionaria de metilfenilsilicona al 5% y helio de ultra-pureza como fase móvil, se obtuvieron cromatogramas con tiempos de retención característicos de una mezcla de **ACETATO DE EFEDRINA y ACETAMIDA, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-metyl-**, que al ser monitoreado por espectrometría de Masas, dio lugar a un espectro de masa/carga, con patrón de fragmentación característico de **ACETATO DE EFEDRINA y ACETAMIDA, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-metyl-**, (Se anexan Cromatogramas y espectros de Masas).

Por Espectrometría de Masas de Incersiòn directa, se obtuvo el Ion molècular (M+1) 208, el cual corresponde al peso molècular más uno de **ACETATO DE EFEDRINA.**

Con base a lo antes expuesto, se formulan las siguientes:

**CONCLUSIÓNES**

**PRIMERA.-** Las seis (6) muestras de sustancia granulosa de color blanco, descritas con anterioridad y motivo del presente dictamen, corresponden a una mezcla de **ACETAMIDA, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-metyl-** y de **ACETATO DE EFEDRINA.**

**SEGUNDA.-** La **ACETAMIDA, N-(2-(acetyloxy)-1-methyl-2-phenylethyl)-N-metyl-**, NO esta considerada como Psicotròpico y/o Estupefaciente por la Ley General de Salud **NI** como precursor químico o químico esencial por la Ley Federal para el Control de Precursores Químicos, Productos Químicos Esenciales y Máquinas para Elaborar Cápsulas, Tabletas y/o Comprimidos.

**TERCERA.-** El **ACETATO DE EFEDRINA** es un derivado químico de la **EFEDRINA**, esta última considerada como **Psicotrópico** por la Ley General de Salud y como **Precursor Químico** por la Ley Federal para el Control de Precursores Químicos, Productos Químicos Esenciales y Máquinas para Elaborar Cápsulas, Tabletas y/o Comprimidos.

**VINGRAM Enterprises Ltd.**_*Specializing in Technology Commerce and Regional Development*
**P.O. Box 11047 * Washington, DC 20008-0247**
**Phone: (202) 257-3558**
**Fax: (202) 667-3134**
**e-mail: vingram@vingramenterprisesltd.com** **website: www.vingramenterprisesltd.com**

**Vedoster Ingram, President**

#7

Ning Ye, Esq.
Attorney at Law
Washington DC Office
1150 Conn. Ave., NW #900
Washington, DC 20036

June 14, 2007

RE: Review of the Analysis Report for Hydroxy-benzyl-N-methyl-acetethamtne (Acetethamtne) Confiscated from UNIMED Pharmaceutical

Dear Attorney Ning Ye:

A request was made for documents involving the analysis of confiscated Hydroxy-benzyl-N-methyl-acetethamtne and a report was received for review. The report contained gas-chromatography/mass spectrometry charts and infrared spectra with printouts of absorption-frequency bands. The report also indicated that proton magnetic resonance spectrometry and qualitative chemical analysis were conducted – charts and information data we have not received. No information was given in the report as to the solvent or solvent system used in the gas-chromatography/mass spectrometry analysis; however, mention was made of a direct probe examination. There was an indication that the infrared spectrum analyses were conducted on alkaline extracts from the samples in question prior to hydrolysis. Based on my years of experiences as a consultant in the handling and testing of confiscated controlled drugs and as a former forensic chemist for the Drug Enforcement Administration (DEA), United States Department of Justice, I found the testing of the samples deficient both procedurally and substantively.

In the forensic science community, especially in the testing and handling of confiscated alleged controlled contraband or drugs, the highest priority is placed on preserving the integrity of the sample during testing and handling. In none of the tests (gas-chromatography and infrared spectrometry) were standard samples of pseudoephedrine and acetethamtne used. If the presence of either one of the compounds were suspected, tests could have been performed to ensure

identification. Blank runs (instrument tests without samples) were not used to test for instrument contamination; standard runs (instrument tests using only standards) were not carried out to assess the reliability of instruments. Without the use of standards, the laboratory would have to carry out total analysis of the confiscated samples utilizing non-destructive methods for purification. Purified and isolated samples would then be tested against standards to establish identification. Test results such as melting points of solids, boiling points of liquids, proton magnetic spectra, gas-chromatography/mass spectrometry and infrared spectrometry for both sample and standard compounds would have to be the same. If a standard sample is not available, a chemist would have to interpret spectra based on the features of a molecule representing the sample and the theory of interpretation of a particular spectrum (for example, gas-chromatography/mass spectrometry, proton magnetic resonance spectrometry, infrared spectrometry, etc.). No independent test or test conducted in isolation is sufficient for the identification of a sample, compound or suspected controlled drug. Even in the forensic science community a combination of valid tests are required for the identification of a drug. None of these approaches were utilized in this instant situation to establish the identification of the samples confiscated from UNIMED Pharmaceutical.

Shortcomings in the analysis of the confiscated samples limited the interpretation of the submitted gas-chromatography/mass spectrometry and infrared spectrum results. The laboratory made no effort to establish the purity of the confiscated samples. Since the laboratory had access to a gas-chromatograph/mass spectrometer, why did it not have access of a simple gas-chromatograph to explore the options of testing the purity of the confiscated samples and screening for possible contaminants? There are other technologies available such as HPLC (High Pressure Liquid Chromatography) and Capillary Electrophoresis that do not employ destructive methods for separating and identifying even fragile drug compounds. The gas-chromatography/mass spectrometer (gc/ms) analysis in the instant situation was conducted without a blank test run or against any standard; therefore, questions persist regarding instrument contamination and reliability. Given the limitations of the gc/ms analysis, the fragment, observed at 189m/e units, has a P+1 peak and is relatively stable. In my opinion, the 189m/e fragment is the parent ion of Acetethamtne. The base peak appearing for the fragment at 58m/e in my opinion can only come from a pathway with a structure favored by Acetethamtne, not by an acetate feature or a pseudoephedrine or ephedrine structure. The third most prominent fragment located at 100m/e, in my opinion, can only come from the Acetethamtne structure, and not from a pseudoephedrine or ephedrine structure. The 189, 58, and 100m/e fragments were present in all

of the gas-chromatograph/mass spectrometer spectra, suggesting that Acetethamtne is present in all situations. I did not observe a 208/me fragment as proffered by the laboratory in its report, usually OV support columns 'bleed' in this vicinity (about 207m/e). The infrared spectra appeared insignificant without a standard spectrum – generally, the printouts and poor spectra do not appear to match; therefore, in my opinion, the infrared spectra are inconclusive. Overall, in my opinion, no conclusions can be established as to the identification of the confiscated samples due to insufficient testing.

With Kind Regards,

Vedoster Ingram, PhM, MS
Chemist

HOWARD UNIVERSITY

COLLEGE OF PHARMACY, NURSING
AND ALLIED HEALTH SCIENCES
SCHOOL OF PHARMACY
DEPARTMENT OF PHARMACEUTICAL SCIENCES

#8

Ning Ye, Esq.
Attorney at Law
Washington, DC Office
1150 Connecticut Ave. #900, NW
Washington, DC 20036

June 18, 2007

Dear Attorney Ning Ye:

A review of the documents involving the analysis of the white powder substance
confiscated from UNIMED Pharmaceutical showed insufficient evidence to
support the identity of the white powder. Analysis of the white powder appeared
to rely heavily on gas chromatography/ mass spectroscopy and infrared
spectroscopy data. While there was some mention of the use of nuclear
magnetic resonance (NMR) spectroscopy in the report, a detailed discussion of
the results from the NMR analyses were not available. This is alarming since the
NMR analysis is key in determining the true identity of the white powder
substance. All other data discussed in the report are not sufficient, as described,
for discriminating between two substances with similar molecular weights and
atomic make-up.

The report indicated that the white powder substance was confiscated from a
package labeled Hydroxy-benzyl-N-methyl acetethamtne (Acetethamtne).

2300 4th Street, NW
Washington, DC 20059

(202) 806-4273
Fax (202) 806-7805

Acetathamtne has a molecular weight and atomic make-up that is similar to the alleged controlled contraband; however the pharmaceutical properties of acetathamtne are expected to be quite different. Therefore, a proper investigation of the white powder via gas chromatography/ mass spectroscopy and infrared spectroscopy would require a method that had been tested and validated using standardized samples of pure acetethamtne and other chemically related substances. Since there was no indication that these procedures were followed, it is my professional opinion that it is impossible to make any claims on the true identity of the white powder substance.

In summary, the lack of validated methods for analysis and sufficient NMR data provided in the report renders the investigation of the white substance to be unreliable and inconclusive.

Sincerely,

LaVerne L. Brown, Ph.D.
Assistant Professor
Howard University
Department of Pharmaceutical Sciences

Immigration and Naturalization Service

# Notice of Entry of Appearance as Attorney or Representative

**Appearances** - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. **Availability of Records** - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

In re: Zhenli Ye Gon

Date:

File No.

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

Name: Zhenli Ye Gon — ☐ Petitioner ☐ Beneficiary ☒ Applicant

Address: (Apt. No.) (Number & Street) (City) (State) (Zip Code)
c/o 1150 Connecticut Avenue, NW, Suite 900, Shanghai, DC 20036

Name: — ☐ Petitioner ☐ Beneficiary ☐ Applicant

Address: (Apt. No.) (Number & Street) (City) (State) (Zip Code)

*Check Applicable Item(s) below:*

☒ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
Highest Court of New York, Federal Courts
Name of Court
and am not under a court or administrative agency order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. (*If you check this item, also check item 1 or 2 whichever is appropriate.*)

☐ 4. Others (Explain Fully.)

SIGNATURE: [signature]

COMPLETE ADDRESS: 1150 Conn Ave. NW #900 Washington DC 20036
~~733 15th Street, NW Suite 783 Washington, DC 20005~~ ~~42-42 Union St. #3C Flushing, NY 11355~~

NAME (Type or Print): Ning YE, Esq. Off Counsel

TELEPHONE NUMBER: ~~202-822-9487~~ 202-862-4343

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*

Ning YE
(Name of Attorney or Representative)

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*

| Name of Person Consenting | Signature of Person Consenting | Date |
|---|---|---|
| Zhenli Ye Gon | [signature] | 07/24/07 |

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Department of Homeland Security
U.S. Citizenship and Immigration Services

U.S. Department of Justice
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 12/31/07

# I-589, Application for Asylum and for Withholding of Removal

**START HERE - Please type or print in black ink. See the Instructions for information about eligibilty and how to complete and file this application. There is NO filing fee for this application.**

NOTE: Please check this box if you also want to apply for withholding of removal under the Convention Against Torture. [X]

## Part A. I. Information about you.

1. Alien Registration Number(s) (A#s) *(If any)*
2. U.S. Social Security Number *(If any)*

3. Complete Last Name: YE
4. First Name: Zhenli
5. Middle Name:

6. What other names have you used? *(Include maiden name and aliases.)* Zhenli YE GON

7. Residence in the U.S. *(Where you physically reside.)* c/o Martin F. McMahon & Assoc.
Telephone Number: (202) 862-4343
Street Number and Name: 1150 Connecticut Avenue, NW
Apt. Number: #900
City: Washington
State: DC
Zip Code: 20036

8. Mailing Address in the U.S. *(If different than the address in No. 7)*
In Care Of *(If applicable)*:
Telephone Number: ( )
Street Number and Name:
Apt. Number:
City:
State:
Zip Code:

9. Gender: [X] Male [ ] Female
10. Marital Status: [ ] Single [X] Married [ ] Divorced [ ] Widowed

11. Date of Birth *(mm/dd/yyyy)* 01/31/1963
12. City and Country of Birth: Shanghai, China

13. Present Nationality *(Citizenship)*: China/Mexico
14. Nationality at Birth: China
15. Race, Ethnic or Tribal Group: Han Chinese
16. Religion: None

17. *Check the box, a through c, that applies:* a. [X] I have never been in Immigration Court proceedings.
b. [ ] I am now in Immigration Court proceedings.
c. [ ] I am **not** now in Immigration Court proceedings, but I have been in the past.

18. *Complete 18 a through c.*
a. When did you last leave your country? *(mmm/dd/yyyy)* 01/31/2007
b. What is your current I-94 Number, if any? 88252630711
c. Please list each entry into the U.S. beginning with your most recent entry.
*List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.)*

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 01/31/2007 | San Diago, CA | B-2 | 03/03/2007* |
| | | | |
| | | | |

19. What country issued your last passport or travel document? China
20. Passport # P CHI 151122462
Travel Document #
21. Expiration Date *(mm/dd/yyyy)* 09/17/2009

22. What is your native language? *(Include dialect, if applicable.)* Chinese
23. Are you fluent in English? [ ] Yes [X] No
24. What other languages do you speak fluently?

**For EOIR use only.**

**For USCIS use only.**
Action:
Interview Date: ______
Asylum Officer ID#: ______

Decision:
Approval Date: ______
Denial Date: ______
Referral Date: ______

## Part A. II. Information about your spouse and children.

**Your spouse.** ☐ I am not married. (Skip to **Your children**, below.)

| 1. Alien Registration Number (A#) *(If any)* | 2. Passport/ID Card No. *(If any)* | 3. Date of Birth *(mm/dd/yyyy)* 01/20/1960 | 4. U.S. Social Security No. *(If any)* |
|---|---|---|---|

| 5. Complete Last Name MARX YU | 6. First Name Tomoiyi | 7. Middle Name N/A | 8. Maiden Name N/A |
|---|---|---|---|

| 9. Date of Marriage *(mm/dd/yyyy)* 08/14/1997 | 10. Place of Marriage Mexico | 11. City and Country of Birth Mexico City, Mexico |
|---|---|---|

| 12. Nationality *(Citizenship)* Mexico | 13. Race, Ethnic or Tribal Group Asian | 14. Gender ☐ Male ☒ Female |
|---|---|---|

15. Is this person in the U.S. ?

☐ Yes *(Complete Blocks 16 to 24.)* ☒ No *(Specify location.)* In prison of Mexico, location unknown.

| 16. Place of last entry in the U.S. | 17. Date of last entry in the U.S. *(mm/dd/yyyy)* | 18. I-94 No. *(If any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? ☐ Yes ☐ No | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |
|---|---|---|---|

24. If in the U.S., is your spouse to be included in this application? *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

**Your children.** Please list **all** of your children, regardless of age, location or marital status.

☐ I do not have any children. *(Skip to Part A. III., **Information about your background.**)*

☒ I have children. Total number of children: Three (3)

(**NOTE:** *Use Supplement A Form I-589 or attach additional sheets of paper and documentation if you have more than four children.*)

| 1. Alien Registration Number (A#) *(If any)* | 2. Passport/ID Card No. *(If any)* 038749953 | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security No. *(If any)* |
|---|---|---|---|

| 5. Complete Last Name YE | 6. First Name Chenliang | 7. Middle Name Kent | 8. Date of Birth *(mm/dd/yyyy)* 03/15/1999 |
|---|---|---|---|

| 9. City and Country of Birth California, USA | 10. Nationality *(Citizenship)* USA | 11. Race, Ethnic or Tribal Group Asian | 12. Gender ☒ Male ☐ Female |
|---|---|---|---|

13. Is this child in the U.S. ?

☐ Yes *(Complete Blocks 14 to 21.)* ☒ No *(Specify location.)* Mexico City, Mexico

| 14. Place of last entry in the U.S. | 15. Date of last entry in the U.S. *(mm/dd/yyyy)* | 16. I-94 No. *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No |
|---|---|---|

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

**Part A. II. Information about your spouse and children.** (Continued.)

| 1. Alien Registration Number (A#) *(If any)* | 2. Passport/ID Card No. *(If any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security No. *(If any)* |
|---|---|---|---|
| | | Single | |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|
| YE | Ziming | Ronald | 12/05/2000 |

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic or Tribal Group | 12. Gender |
|---|---|---|---|
| California, USA | USA | Asian | [X] Male [ ] Female |

13. Is this child in the U.S. ? [ ] Yes *(Complete Blocks 14 to 21.)* [X] No *(Specify location.)* Mexico City, Mexico

| 14. Place of last entry in the U.S. | 15. Date of last entry in the U.S. *(mm/dd/yyyy)* | 16. I-94 No. *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | [ ] Yes [ ] No |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
[ ] Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
[ ] No

| 1. Alien Registration Number (A#) *(If any)* | 2. Passport/ID Card No. *(If any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security No. *(If any)* |
|---|---|---|---|
| | | Single | |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|
| WONG | Michael | Ye | 01/11/2006 |

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic or Tribal Group | 12. Gender |
|---|---|---|---|
| Las Vegas, NV | USA | Asian | [X] Male [ ] Female |

13. Is this child in the U.S.? [ ] Yes *(Complete Blocks 14 to 21.)* [ ] No *(Specify location.)* Las Vegas, NV, USA

| 14. Place of last entry in the U.S. | 15. Date of last entry in the U.S. *(mm/dd/yyyy)* | 16. I-94 No. *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | [ ] Yes [ ] No |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
[ ] Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
[ ] No

| 1. Alien Registration Number (A#) *(If any)* | 2. Passport/ID Card No. *(If any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security No. *(If any)* |
|---|---|---|---|
| | | | |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|
| | | | |

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic or Tribal Group | 12. Gender |
|---|---|---|---|
| | | | [ ] Male [ ] Female |

13. Is this child in the U.S. ? [ ] Yes *(Complete Blocks 14 to 21.)* [ ] No *(Specify location.)*

| 14. Place of last entry in the U.S. | 15. Date of last entry in the U.S. *(mm/dd/yyyy)* | 16. I-94 No. *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| | | | |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any ? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? |
|---|---|---|
| | | [ ] Yes [ ] No |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
[ ] Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
[ ] No

**Part A. III. Information about your background.**

1. Please list your last address where you lived before coming to the U.S. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
(**NOTE:** *Use Supplement B, Form I-589 or additional sheets of paper, if necessary.)*

| Number and Street *(Provide if available)* | City/Town | Department, Province or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| c/o 1150 Conn. Ave.,NW, #900 | Washington | DC 20036 | USA | 04/07 | Pres. |
| | | | | | |

2. Provide the following information about your residences during the past five years. List your present address first.
(**NOTE:** *Use Supplement B, Form I-589 or additional sheets of paper, if necessary.)*

| Number and Street | City/Town | Department, Province or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| c/o 1150 Conn.Ave NW, #900 | Washington | DC 20036 | USA | 04/07 | present |
| 2290 Casa Bella Ct. | Las Vegas | NV 89117 | USA | 01/07 | 04/07 |
| | | | | | |
| | | | | | |
| | | | | | |

3. Provide the following information about your education, beginning with the most recent.
(**NOTE:** *Use Supplement B, Form I-589 or additional sheets of paper, if necessary.)*

| Name of School | Type of School | Location *(Address)* | Attended From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|
| East China Normal Univ | Institute of Higher Learning | Shanghai, China | 09/87 | 07/89 |
| East China Institute of Law | Law School | Shanghai, China | 09/84 | 07/86 |
| | | | | |
| | | | | |

4. Provide the following information about your employment during the past five years. List your present employment first.
(**NOTE:** *Use Supplement B, Form I-589 or additional sheets of paper, if necessary.)*

| Name and Address of Employer | Your Occupation | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|
| Unimed Pharmaceutical SA DE CV Mexico City, Mexico | President, CEO | 05/97 | Present |
| | | | |
| | | | |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
(**NOTE:** *Use Supplement B, Form I-589 or additional sheets of paper, if necessary.)*

| | Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|---|
| *Mother* | Guiyu Gong | Shanghai, China | ☐ Deceased Shanghai,China |
| *Father* | Yueling Ye | Shanghai, China | ☐ Deceased Shanghai,China |
| *Sibling* | Hong Jun Ye | Shanghai, China | ☐ Deceased Shanghai, China |
| *Sibling* | | | ☐ Deceased |
| *Sibling* | | | ☐ Deceased |
| *Sibling* | | | ☐ Deceased |

## Part B. Information about your application.

(*NOTE: Use Supplement B, Form I-589 or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)*

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the INA or withholding of removal under the Convention Against Torture) you should provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places and descriptions about each event or action described. You should attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, please explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, "Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1. Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below:

I am seeking asylum or withholding of removal based on:

- [X] Race
- [ ] Religion
- [ ] Nationality
- [X] Political opinion
- [X] Membership in a particular social group
- [X] Torture Convention

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

[ ] No [X] Yes

If "Yes," explain in detail:

(1) What happened;

(2) When the harm or mistreatment or threats occurred;

(3) Who caused the harm or mistreatment or threats; and

(4) Why you believe the harm or mistreatment or threats occurred.

I was defamed, and falsely charged, with fraudulent and perjuous charges by Mexican authorities, being targeted for assassination attempts, My wife is jailed for not doing anything illegal.

For further details, please refer to my Affidavit Statement.

B. Do you fear harm or mistreatment if you return to your home country?

[ ] No [X] Yes

If "Yes," explain in detail:

(1) What harm or mistreatment you fear;

(2) Who you believe would harm or mistreat you; and

(3) Why you believe you would or could be harmed or mistreated.

I will definitely be killed by the corrupted regime of Mexico undder Felipe Calderon Regime and under the rule of National Action Party (PAN) for political retaliation, persecution and the latters' burning desire to silence me forever b/c I am the key witness of the PAN's Presidential election frauds. For details, please see my affidavit statement.

**Part B. Information about your application.** (Continued.)

2. Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?

☐ No ☒ Yes

If "Yes," explain the circumstances and reasons for the action.

Based upon frivolous incriminating evidence, if any, Mexican regime underPresident Calderon wrongfully charged for committing illicit drug related crimes, which I have never touched. I was living in fear of imminent death with assassination attempts; My wife and her two brothers were jailed for they are my relatives; See my Affidavit.

3.A. Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☐ No ☒ Yes

If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

I am an active PRI member; I was an PRI related Honorary Senator sitting onFederal Parliament of Mexico; Please see my Affidavit.

B. Do you or your family members continue to participate in any way in these organizations or groups?

☐ No ☒ Yes

If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

Still am I a PRI active member.

4. Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

☐ No ☒ Yes

If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

I will be definitely tortured.because all my relatives, employees were tortured in jail in Mexico. See my Affidavit.

## Part C. Additional information about your application.

**(NOTE:** *Use Supplement B, Form I-589 or attach additonal sheets of paper as needed to complete your responses to the questions contained in Part C.*)

1. Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U. S. Government for refugee status, asylum or withholding of removal?

   ☒ No ☐ Yes

   If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents or your siblings received as a result of that decision. Please indicate whether or not you were included in a parent or spouse's application. If so, please include your parent or spouse's A-number in your response. If you have been denied asylum by an Immigration Judge or the Board of Immigration Appeals, please describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

2. A. After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States? ☒ No ☐ Yes

   B. Have you, your spouse, your child(ren) or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

   ☒ No ☐ Yes

   If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

3. Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

   ☒ No ☐ Yes

   If "Yes," describe in detail each such incident and your own, your spouse's or your child(ren)'s involvement.

## Part C. Additional information about your application. (Continued.)

4. After you left the country where you were harmed or fear harm, did you return to that country?

☒ No ☐ Yes

If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s) and the length of time you remained in that country for the visit(s).)

5. Are you filing this application more than one year after your last arrival in the United States?

☒ No ☐ Yes

If "Yes," explain why you did not file within the first year after you arrived. You should be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V. "Completing the Form," Part C.

6. Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted and sentenced for any crimes in the United States?

☒ No ☐ Yes

If "Yes," for each instance, specify in your response: what occurred and the circumstances, dates, length of sentence received, location, the duration of the detention or imprisonment, the reason(s) for the detention or conviction, any formal charges that were lodged against you or your relatives included in your application and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

## Part D. Your Signature.

| I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking. | Staple your photograph here or the photograph of the family member to be included on the extra copy of the application submitted for that person. |
|---|---|

***WARNING:* Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. If filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.**

| Print your complete name. ZHENLI YE | Write your name in your native alphabet. 叶真理 |
|---|---|

Did your spouse, parent or child(ren) assist you in completing this application? [X] No [ ] Yes *(If "Yes," list the name and relationship.)*

| *(Name)* | *(Relationship)* | *(Name)* | *(Relationship)* |
|---|---|---|---|

Did someone other than your spouse, parent or child(ren) prepare this application? [ ] No [X] Yes *(If "Yes," complete Part E.)*

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim? [X] No [ ] Yes

Signature of Applicant *(The person in Part A.I.)*

[ [signature] ]

Sign your name so it all appears within the brackets

Date *(mm/dd/yyyy)*

## Part E. Declaration of person preparing form, if other than applicant, spouse, parent or child.

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

| Signature of Preparer [signature] | Print Complete Name of Preparer ~~Martin McMahon, Esq.~~ NING YE, Esq. |
|---|---|
| Daytime Telephone Number (202) 862-4343 | Address of Preparer: Street Number and Name 1150 Conn. Ave. NW, 9th Floor |

| Apt. No. | City | State | Zip Code |
|---|---|---|---|
| #900 | Washington | DC | 20036 |

## Part F. To be completed at asylum interview, if applicable.

**NOTE:** *You will be asked to complete this Part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered ____ to ____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

| | |
|---|---|
| Signature of Applicant | Date *(mm/dd/yyyy)* |
| Write Your Name in Your Native Alphabet | Signature of asylum officer |

## Part G. To be completed at removal hearing, if applicable.

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are ☐ all true or ☐ not all true to the best of my knowledge and that correction(s) numbered ____ to ____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for any benefits under the Immigration and Nationality Act and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

| | |
|---|---|
| Signature of Applicant | Date *(mm/dd/yyyy)* |
| Write Your Name in Your Native Alphabet | Signature of immigration judge |

# Affidavit Statement

Zhenli Ye Gon, being duly sworn, deposes and certifies, under the penalty of perjury, that the following of my sworn statement is true and correct:

I respectfully submit this Affidavit Statement in support of my complaint against the Government of Mexico for its gross violation of human rights against me, my family members and my employees in the color of "war on drugs", for the latter's gross violation of Article 5, Artcle 7, Article 21 and Article 24 of American Convention on Human Rights.   This Petition may be timely pursuant to Article 46 of the Convention.

The Mexican government has wrongfully arrested and illegally detained my wife, my relatives and my employees, for government fabricated, fraudulent charges in violation of Article 7, of the Convention; for torturing all 11 inmates for no valid cause in violation of Article 6, and illegally taking, stealing and destroying my legitimate property in violation of Article 21 of Convention.

I am a citizen of Mexico of Chinese origin, currently residing at the United States of America. I emigrated into Mexico based on my marriage with my wife, Tomoiyi Marx-Yu, a Mexican citizen, in 1990. I became a naturalized citizen of Mexico in 2003. My permanent domicile house is located at Sierra Madre 515, Colonia Lomas de Chaputepec, Mexico City, Mexico. I am father of three minor children, all born in the United States. I am the owner and the CEO for Unimed Pharmaceutical, SA de CV, which is a giant pharmaceutical conglomerate involving 22 assembly lines using the most advanced cutting-edge technology from Germany, Italy, Switzerland and the United States. The investment program involves approximately 200 million US dollars.

I have been a law abiding citizen, without criminal records. I am also an ultra-successful business entrepreneur engaging in legitimate business activities for quite 20 years. My family and I have been living a peaceful life in the country of Mexico until March 16, 2007, when my house was suddenly raided by police forces under the command of Mr. The Honorable Modena-Mora, the Attorney General of Mexico.   With fraudulently fabricated evidence, the Mexican government under His Excellency Felipe Calderon, the President of Mexico, planted all sort of fancy felonious charges as of "narcotic drug trafficking", "international drug kingpin" against me.   Under these seriously wrongful charges, unsubstantiated with any evidence in favor of the Mexican government,   My wife, a housewife who has never been involved in any politics or in my business matters, together with 10 other relatives and employees of mine, all of whom are completely irrelevant to these false charges against me, were arrested, and have been jailed since March 2007.   Those completely innocent victims were severely, and continuously tortured in Mexican government custody, for the purpose to squeeze false incriminating evidence against me from their mouths.

I am not a drug dealer, neither am I a drug lord, much less a drug kingpin. I have never transacted illegal narcotic drugs either by myself, or in association with any "drug cartel", let alone organizing and leading "drug cartel" in any place of the world at any time by

myself. The enterprises, namely, "Unimed Pharmaceutical SA de CV", any part, branches, subsidiaries thereof, is a lawful business organization, transacting lawful business in clean, neat and transparent manner.

2. I have never engaged in, by myself, or associated with any others, illegal narcotic drug trafficking, through out my life, since the day one of my birth, up till now; I have never consumed, tasted, inhaled, smoked, sold, bought, manufactured, processed, tested, distributed any illegal drugs, not even a single once, a single milligram:

3. I have never touched such staff as Safrole, MDMA, Methamphetamine, etc, through out my life;

4. I have never written, kept, or seen such "handwritten note" on how to make 20 tons of Safrole into MDMA or Methamephetamine;  No records show that I have ever touched Safrole through out my life.

5. I purchased 22 Assembly lines using the state of arts technology from Germany, Italy for the purpose of mass production of multi-faceted legitimate pharmaceutical products. The world's most advanced technology I employed and bought is not to use for mass-production of such illegal drugs as MDMA, Methamephetamine. It is a simple and plain truth.  I does not need to "buy" the USS Independence Aircraft carrier just for the purpose to smuggle a few cantons of illegal cigarettes.

6. I cannot say that I have never transacted in any chemical agents under "controlled substance" list in Mexico. During the period from 2002 through the end of 2003, I was lawfully transacted, imported and distributed "pseudo ephedrine" in Mexico, with the government permit, issued by the Federal Department of Public Health of Mexico.  I was competing with the several other suppliers of Pseudoephedrine" in Mexico. All my government permitted transaction of pseudo ephedrine has been fully recorded, under the strict supervision by Mexican Department of Health. The quantity, the tonnage of the pseudo ephedrine that I have transacted, had never exceeded the quota set forth by the Mexican government, rather, the quantity I exactly transacted had never reached the maximum ceilings set forth by the Federal Department of Health and all rules and regulations were strictly followed under the supervision of the Department of Health. During the period, I simply made normal business profits by selling the pseudo-ephedrine to the government approved, government assigned legitimate buyers, under the control and supervision of the Department of Health.  My log-book under the government supervision is neat and intact.  I did not make, as the Attorney General claimed, cited by the Associated Press, several million dollars dirty money from selling these raw materials to the international drug cartels.  The Attorney General's claims are false charges for the purpose to cover up its wrongful conducts.

7. When Mexican Government ceased to issue me the permit of transacting pseudo ephedrine, I immediately stopped importing, buying, selling, processing, distributing pseudo ephedrine".

8. In November 2006, the Mexican Government stated that its customs seized a 19 metric tons of chemical white powder", which the Mexican government mis-characterized as "Pseudoephedrine", a chemical agent under the list of controlled substance. Mexican government falsely accused me for "illegally" importing "pseudoephedrine" from China into the Seaport of Mexico, via Long Beach, California, USA. Mexican Government falsely argued that these 19 tons of chemical agents are "pseudoephedrine". The fact is that these 19tons of chemical agents are neither precursor chemicals, nor under the controlled substance list.

9. Those 19 metric tons of chemical agents were supplied by an exporter, namely, China Chifeng-Arker Pharmaceutical Technology Co. Ltd., a subsidiary to Shanghai Enterprises Group, a PRC state owned enterprises, pursuant to the sales contract concluded between Unimed and Chifeng Arker (Please see the exhibit of Contract, Bills of Ladings). According to the sales contract, the chemical agents my company purchased from the China supplier is: Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl-and Ephedrine Acetate*". Acetethamtne, or ACETAMIDE, is such proprietary key ingredients as phenylephrine HCI, to produce variety of legitimate cold medicine, provided the buyer has personal access to the cutting-edge know-how of such advanced technology. The buyer/importer's legitimate business purpose to import such legitimate chemical agents is also safeguarded with the fact that both Chifeng Arker and its parent company Shanghai enterprises are state-owned enterprises whose business activities are under the strict control and supervision of the government of the People's Republic, because the reputation of the PRC state is at stake if its enterprise, as an integral part of the PRC nation, is found to export, or attempt to export, any controlled substance, or precursor drugs to a foreign importer without both importing and exporting license.

10. The chains of custody of these 19 metric tons of chemical agents are as follows: From Chinese supplier, to Mexican Customs, to Mexican Attorney General's designated custodian.

11. Now, having failed to find any evidence of drug trafficking, not even a single partical of illicit narcotic drug has ever been found at any places, what remains in dispute is the 19 metric tons of chemical agents that I imported from China without government license. These 19 tons of chemical agent is legitimate chemical agent, namely, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), the chemical itself whose pharmaceutical property was ascertained by Mexico's own forensic laboratory test while its legitimacy was also officially recognized by the same testing report. However, Mexican government argued that these chemical agents that I imported from China from 2005 through 2006 is "pseudo-ephedrine" in its contradictory national forensic laboratory testing. The allegation, together with so-called "scientific analytical report" is completely frivolous. All these chemical agents are harmless, lawful chemical products not under "controlled substance" list. Neither is it under the list of "analogue drugs". Based on several of independent chemists analytical reports, the following scientific findings are made, among others:

A. Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl,* and Pseudoephedrine, are two completely different chemical properties; (Dr. Ingram's Independent Expert Opinion, Exhibit 2)

B. B. Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Exhibit 2)

C. Characterization of the contraband as "pseudoephedrine" is "unfounded" B. Reading of data and chart concerning its spectrum expression and its molecular structure, the confiscated "white powder" is (Acetethamtne), not "pseudoephedrine" (Dr. Ingram's Independent Expert Opinion, Exhibit 3)

*D.* The Mexican Government's forensic examination is seriously flawed (Dr. Brown's Expert Opinion in support of Dr. Ingram's same findings. Exhibit 3)

*E.* "ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl is NOT considered by the General Health Law to be a psychotropic or narcotic drug, Nor is it a chemical Precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Chemical Products, and Machines for the Manufacture of Capsules, Tablets and/or Compressed Tablets." (Please refer to page 2 of the Mexican National Forensic Lab Testing Report, as translated into English, Original Case file Page 85898 of your government's case dossier, Exhibit 4)*

*F.* Mexican government's own forensic testing reports have destroyed its Attorney General's allegation that the 19 metric tons of chemical agents exported by Chinese supplier under the sales contract is the proof of my company, Unimed's criminal act of "pseudoephedrine", a chemical agents under controlled substance, namely, "crimes against public health". If, according to Mexican Government's own finding, Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as "ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl" is NOT considered by the General Health Law to be a psychotropic or narcotic drug, Nor is it a chemical Precursor or essential chemical according to the Federal Law for Control of Chemical Precursors, Chemical Products, and Machines for the Manufacture of Capsules, Tablets and/or Compressed Tablets.", then, all documentary evidence including my purchase contracts, bills of lading, packing lists, all indicated my legitimate purpose: to purchase* Acetethamtne from Chifeng-Arker Pharmaceutical company, and the implementation of my lawful purpose, say, completion of my legitimate act, leading to such **designated** chemical agents to be shipped to its destination. If the Mexican Government later argued that the chemical agents, after **fraudulent treatment** under the chains of custody of Mexican

government, it found "ingredient of pseudo-ephedrine", such a finding is irrelevant. Because the chains of custody of the cargo in question is directly from the hand of Chinese Exporter to that of Mexican government. My company and I are not in the chains of custody.

12. According to Forensic Examination conducted by the National Forensic Laboratory under attoney general's office, it confirms the finding of the chemical property of Hydroxy-Benzyl-N-Methyl-Acetethamtne (Acetethamtne), also known as ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl, a proper characterization and identification of the chemical agents exported by the PRC supplier to Unimed, intercepted by the Mexican Customs:*

Conclusions: First-The six (6) samples of the previously described white, granular substance in this report consist of a mixture of ACETAMIDE, N-(2-(acetyloxy-2-phenylethyl)-*N-Methyl-and Ephedrine Acetate". (Please refer to (Please refer to page 2 of the Mexican National Forensic Lab Testing Report, as translated into English, Original Case file Page 85898 of your government's case dossier, Exhibit #5) Here the quantity and ratio of "ephedrine" is not clear.*

With the total collapse of all incriminating evidence, Mexican authorities' "illicit drug charges" against me and my family members, my employees, and my companies have totally collapsed. However, the Attorney General's office under the Calderon Administration has determined to continue this failed and scandalous prosecution, for the mere purpose to deceive the international community. Mexican Government has even accelerated the persecution against 11 innocent inmate, including my wife, by using internationally prohibited tortures. The ulterior motive of these government committed offenses against universally accepted international legal norms is that the Government intended, in bad faith, to cover up a scandals behind so-called $207 million so-called "illegal drug money" dug out from my residence. Most of the cash found in my residence, the stacks of $100 bills, is actually the PAN Party's secretive Presidential Campaign funds, entrusted to my residential house, under the order of Mr. Javier Larzano Alarcon and his associates, with the escort of the unformed police and police vehicles, from May 2006 through September 2006. I reluctantly took the dangerously fiduciary duty as the custodian of such funds because Mr. Javir Alarcon threatened me if I did not cooperate with the National Action Party as following his order to take custody of these money, my throat will be cut. If I were not falsely tarnished to be a "drug lord", running an "international drug cartel", the scandal of PAN's secretive campaign funds would be exposed to the world.

The whole scheme around the collapsed "drug" charges against me and my beloved ones, my employees, and my companies, are an on-going, government sponsored international fraud. The Mafioso forces behind Mexican law enforcement have designed and devised to silenced me forever, after completely ripped me off my hard-earned property through my 20-year legitimate business activities and thoroughly tarnished my reputation.

The Mexican government has also incited ultra-raciest hatred against me. My pictures were hung on out of the Unimed Construction worksite everywhere under the Government control now, with such emotional slogans as "kill, kill, kill!!!" At least two assassination attempts were made at my immediate relatives residential house at Las Vegas, Navada, USA. The most recent failed assassination attempt was recorded by John, 70-year Caucasian man and his wife, the tenant of a House under my relative's name in Las Vegas, Navada. On July 5, 2007, John, the tenant of my relative's house, vividly described that 4 suspicious men, falsely claiming to be law enforcement task force dispatched by the DEA, kicked and broke the front door of the house, trying to find me and kidnap or kill me. When my relatives inquired about the this incident to U.S. DEA, the officials denied its involvement. The DEA's inquiry with the Metropolitan police authority also turned out that there was no such dispatch.

Due to the fact that I am in imminent life threatening risk, should I physically appear in Mexico, I am unable to exhaust the local judicial remedy by going back to Mexico. Additionally, my legal counsels in the United States have exhausted their efforts, in representing me, to propose communicating with Mexican government, via its diplomatic envoy in the United States, to lay out tables and working schedules leading to solution of mutual understanding of this case, these reasonable proposals were flatly rejected. While these efforts were defamed and officially condemned by the Mexican Government on July 2, 2007, followed with renewed assassination attempts on July 5, 2007. Therefore, grounds of waiver pursuant to Artcle 46(2). The life threatening risk looming over me by Mexican regime for political retaliation as well as for the purpose to silence me, a knowledgeable key witness of the PAN's Presidential campaign frauds, once and ever, have also prompted me to apply for asylum in the United States. The same cause also prompted me to seek habeas corps relief. In the wake of abusively used tortures against my relatives endlessly jailed in Mexican prison, I have to apply for relief under Torture Convention.

Should I am turned into the hands of corrupted Mexican authorities, I will definitely be tortured and killed instantly and quietly.

For further questions and concerns about this matter, you may also contact my counsel Ning Ye, Esq. At 301-641-7345. Further affiant sayth naught.

[signature]

I hereby certify that my foregoing statement made under penalty of perjury is true and correct.

Subscribed and sworn to before me on this 20th day of July, 2007

______________________________

Notary public:

My commission expires on ________________________.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

07-1308
RWR

**I (a) PLAINTIFFS** ZHENLI YE GON

**DEFENDANTS** Alberto Gonzalez, et al

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Martin McMahon & Assoc
1150 Conn. Ave. NW. #900, Washington DC 20036
301-641-7345

Case: 1:07-cv-01308
Assigned To : Roberts, Richard W.
Assign. Date : 7/24/2007
Description: Habeas Corpus/2255

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZEN...** FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**☐ A. *Antitrust***
- ☐ 410 Antitrust

**☐ B. *Personal Injury/ Malpractice***
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**☐ C. *Administrative Agency Review***
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— O —

| ☒ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC § 2241 / 28 USC 1331

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 DEMAND $ Check YES only if demanded in complaint JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☐ NO If yes, please complete related case form.

DATE 07/24/2007 SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd

| ☒ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ Multi district Litigation | ☐ 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC § 2241 / 28 USC 1331

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 **DEMAND $** Check YES only if demanded in complaint **JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☐ NO If yes, please complete related case form.

**DATE** 07/24/2007 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd

# CIVIL COVER SHEET

07-1308 RWR

**I (a) PLAINTIFFS** ZHENLI YE GON

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS** Alberto Gonzalez, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Martin McMahon & Assoc
1150 Conn. Ave. NW. #900, Washington DC 20036
301-641-7345

Case: 1:07-cv-01308
Assigned To : Roberts, Richard W.
Assign. Date : 7/24/2007
Description: Habeas Corpus/2255

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZEN...** FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**☐ A. *Antitrust***
- ☐ 410 Antitrust

**☐ B. *Personal Injury/ Malpractice***
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**☐ C. *Administrative Agency Review***
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil***

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— O —